Edmonds, J.
 

 Sus, being the consignee of a cargo of oranges, employed plaintiffs, as auctioneers, to sell them; on the same day and place at which the auction sale took place, Sus sold the whole cargo to Miller & Parsons ; plaintiffs were ignorant of that sale, but made their sale at auction, and Meacham purchased of them a large quantity, and assigned part of his purchase, viz., 60 boxes, to the defendant. The defendant received that quantity, directly from the plaintiffs, giving his receipt for them, as if he had been directly a bidder at the sale ; he afterwards refused to pay the price at which Meacham had bought them, but tendered the price at which Miller
 
 *223
 
 & Parsons had bought the whole cargo; that was refused by the plaintiffs, and this suit was brought as for goods sold and delivered.
 

 The only defence set up in the pleading is
 
 nonassumpsit,
 
 and that the sale is void, because of the private * 224 1 Sa^e ™ co:rdravention of the statute. *There is J no plea of a tender, nor any payment of the money into court, and no attempt on the part of the defendant to rescind the contract, by restoring or offering to return the oranges which he had received, but the objection to the plaintiffs’ recovery is put, on the argument before us, as well as in the pleadings, upon the grounds that there was no contract of the defendant with these plaintiffs and that the auction sale was void by reason of the private sale.
 

 In respect to the first point, there are two considerations which, in my opinion, are conclusive against the defendant. One is, that an auctioneer has such a special property or interest in the subject-matter of the sale, that he may sue in his own name, unless the principal or real owner elect to bring the action in his name. (Ohitty on Cont. 185.) And it is not necessary to prove that he has a special property or interest, for that flows, as a matter of course, from his position as an auctioneer, and it is only where a party acts as a mere agent or servant, that a special beneficial interest must be proved, to maintain an action, or may be disproved, to defeat it. The other is, that the defendant is estopped from denying that he contracted directly with the plaintiffs, by receiving the goods from them, giving his receipts to them, as if on a purchase made by him from them, and by his subsequent recognition of the whole transaction as a sale directly from them to him. He treated the transaction throughout as a sale from them to him, until he obtained possession of the property and appropriated it to his own use, and it no longer lies in his mouth, to refuse that character to it.
 

 
 *224
 
 The other point involves two questions: first, whether the private sale rendered the public one void? and whether, if it did, the defendant can take advantage of it, without rescinding the contract of purchase ?
 

 The 25th section of the auction act (1 R. S. 532) forbids an auctioneer, or any other person, on the day and at the place where his public auction shall be held, from selling at private sale any goods or effects liable to auction-duties,under a forfeiture of a sum equal to the price for which they shall *be so sold, and the 39th ^ section of the statute imposes a penalty of treble ^ damages to the party injured, upon any one who shall, by any fraudulent means, seek to elude or defeat the operation of the statute.
 

 There is no evidence that this defendant has been in anywise injured by the private sale in this case, and it is, therefore, unnecessary to inquire, whether he can succeed in the recoupment of his treble damages, which he has faintly shadowed forth in the concluding part of the notice appended to his answer. The only legitimate inquiry is, whether the private sale to Miller & Parsons rendered void the public sale to him ? I say, to him, because as to the sixty boxes involved in this suit, he took the place of the bidder at the public sale, and became the purchaser of them from the plaintiffs.
 

 It will be observed, that it is the private sale which is forbidden by the 25th section of the statute, and not the sale at auction, and that the forfeiture to be sued for by the district-attorney and for the benefit of the poor of the county, is the price given for the property at private sale. Such private sale being forbidden by the statute, would doubtless be void; but I do not see how that could at all affect the public sale. It was the public sale which the statute meant to protect and encourage, and the private sale which it intended to forbid, and I do not see how the unlawfulness of the latter, can make the former, which is its opposite, also unlawful, unless it be upon
 
 *225
 
 the principle announced by the learned author who amid his legal maxims inserted this,
 
 suppressio falsi, suppressio veri,
 
 and translated it
 
 “A
 
 suppression of the falsehood is a suppression of the truth itself.” (Tayler’s Law Glossary 424.)
 

 If the defendant aimed at keeping auction sales pure and free from an illegal taint, he might have punished the illegal private sale, by making his complaint to the district-attorney under the 44th section of the statute, or if he had been personally aggrieved, he might have brought his suit for his treble damages, under the 39th section; but it seems to be a strange confusion of ideas, which would make a transaction void, because its antagonist was illegal. Or, if the plaintiffs now were seek- * 226 1 **° recover uPon the contract of the private -* sale, the defendant might, perhaps, repose himself upon the illegality of the contract, as he might, under the usury laws, and deny the right to base an action on an illegal contract. But no such effort is made by the plaintiffs in this case; they are, on the other hand, seeking to enforce only a contract which is nowhere forbidden, and indeed, which it was the object of the statute to protect, and against which no provision of the act is at all directed. I confess myself unable to appreciate the argument that would make such a contract illegal.
 

 Kindred to these objections is that made by the counsel for the appellant, on the argument, that the bidding by Miller & Parsons rendered the auction sale void. On the trial, the judge was asked to charge that such bidding rendered the sale fraudulent, of itself, and he charged that if they' did bid and enhanced the value of the property, or by a pretended competition inflamed the zeal of the buyers, it was a fraud on the defendant, and the sale could not have been enforced against him. In this, it seems to me the judge charged correctly as to
 
 *226
 
 the law, and precisely (in substance, though not, perhaps, in terms) as he was requested to charge.
 

 But the learned judge went further, and held that the sale was thereby voidable only; that is, as I understand him, that it was at the option of the defendant, whether it should be avoided or not; and that the defendant had made his election to consider the sale as valid, by keeping the property and not even offering to return it. To this part of the charge, there was no specific exception. The general remark on the record that
 
 “
 
 the defendant was to be considered as excepting to any and every legal proposition in the charge,” was altogether too general, to be of any avail, as it has been well settled by repeated decisions of this court. The only available exception was to the judge’s refusal to charge, and I have already disposed of that, by expressing the opinion, that in this regard, he did charge as requested.
 

 Besides, I do not see any well-grounded objection to the addition here complained of. It was simply saying that the *defendant, although he had been de- A frauded, might affirm or disaffirm the contract, ^ at his election, and that he could not do both — affirm it so far as to keep the property, and disaffirm it so far as to avoid paying for it.
 

 The consequences now claimed by the defendant in this case do sometimes flow from a ruling that a contract is void, as in cases of usurious contracts, but never without great reluctance on the part of the court, and only in obedience to a stern and unyielding provision of law, rendering void, not only the evidence of the debt, but the debt itself. I am not aware, that they have ever been held to flow from fraudulent biddings at an auction sale; no case going that length has been cited. The utmost has been, to allow the purchaser, by reason of the fraud, to rescind the contract. And in order to rescind, both parties must be placed in the identical situation which they occupied, and stand upon the same
 
 *227
 
 terms as those which existed when the contract was made. (Chitty on Cont. 574;
 
 Hunt
 
 v.
 
 Silk,
 
 5 East 449; 2 Kent Com., 5th ed.,
 
 588; Crowder
 
 v.
 
 Austin, 2
 
 Car. & Payne
 
 208; Howard
 
 v.
 
 Castle,
 
 6 T. R. 644.)
 

 In this case, there was no rescinding of the contract, nor even an attempt to do so. It was an attempt to hold the contract good so far as to retain the property, and rescind it so far as to avoid paying for it. I know of no principle bearing upon this case that would warrant such a result, and even if we wore called upon to review the decision below on this point, I should be at a loss to discover any error in it. For these various reasons, then, I am of opinion, that the judgment ought to be affirmed.
 

 Judgment affirmed.