RUGAN et al. v. SABIN et al.

(Circuit Court of Appeals, Eighth Circuit. December 6, 1892.)

No. 164.

1. EQUITY—RESCISSION OF SALE—FRAUD—NOTICE.

An attorney misrepresented to his principal, who resided in another state, the amount of liens on certain property, and the value of the principal's interest therein, and thereby induced the principal to sell at a grossly inadequate price to a supposed third party, with whom the attorney was in fact jointly interested. Another attorney notified the principal of the true condition of affairs within 40 days thereafter, but the principal, to whom the first attorney had written to persuade him that the sale was for his interest, did not return the purchase money, nor announce his intention to repudiate the sale, but remained silent until his death, more than seven years thereafter, during which time the property had greatly increased in value. *Held,* that he had elected to ratify, and that the sale could not be rescinded by his heirs.

**2. SAME—LIMITATIONS.**
    Consol. St. Neb. p. 971, § 4548, limits actions for relief on the ground of fraud to four years after its discovery. In that state the distinction between the forms of actions at law and suits in equity has been abolished. *Held,* that the statute should control a federal court sitting in equity, and that the four years begin to run from the discovery of any facts sufficient to put a person of ordinary intelligence on an inquiry, which, if pursued, would lead to discovery of the fraud. Parker v. Kuhn, 32 N. W. Rep. 74, 21 Neb. 413; Wright v. Davis, 44 N. W. Rep. 490, 28 Neb. 479,—approved.

**3. SAME—DISABILITIES AND EXCEPTIONS.**
    Where a vendor has been induced to sell by fraud, and has failed to rescind the sale after discovery, the facts that he was at the time credulous, and so feeble in mind and body that he was unfit to transact business, are not sufficient to prevent the running of the statute, since such disability is not included among those to which the statute expressly gives this effect.

Appeal from the Circuit Court of the United States for the District of Nebraska.

In Equity. Bill by Eunice Rugan, Louvira Hart, and Martha E. Edwards against Robert W. Sabin, Gabriel Beachley, and Mary L. Sabin, to set aside a sale of land, and for further relief. Demurrers to the bill were sustained. Complainants appeal. Affirmed.

Statement by SANBORN, Circuit Judge:

The appellants brought suit in the court below to set aside a sale of 80 acres of land made by their father to the appellees Robert W. Sabin and Gabriel Beachley, and to recover of them and Mary L. Sabin, the wife of Robert, a portion of the land which they still hold, and the proceeds of a portion that has been sold. The appellees interposed demurrers to the bill. The court below sustained the demurrers, and dismissed the bill, and this is the supposed error of which appellants complain. The following is the state of facts disclosed by the bill:

The appellants are the only heirs at law of Charles B. Holt, who died intestate March 4, 1889. Holt resided in Illinois, and owned 160 acres of land near Beatrice, Neb., upon which there were certain tax liens, and in the fall of 1880 he went to Nebraska, and conveyed an undivided half of this land to the appellee Robert W. Sabin, for the benefit of himself and his partner, J. A. Smith, who agreed to institute and carry through the courts of Nebraska an action against the holder of the tax liens for the recovery of the land. They commenced the action, and on December 24, 1883, obtained a final decree for its recovery upon the payment of $403.55 on account of the tax liens, which was then paid. On April 13, 1882, after this action for the recovery of the lands had been decided in their favor in the trial court, and while it was pending on a writ of error in the supreme court of the state, Sabin, with the knowledge of appellee Beachley, and for the purpose of obtaining a conveyance of Holt's undivided half interest in said land, represented to him that it was doubtful which side would be successful in said action; that, if they succeeded, they would be compelled to pay $1,000 for taxes and $300 for improvements; that he had tried to find, and had finally obtained, a purchaser for Holt's interest in the land, who would give $800 for his quitclaim deed, and relieve him from all further cost, liability, or trouble in the matter; that this purchaser was Beachley, and that he thought the offer a good one, and advised him to accept it,—while the facts, which Sabin well knew, were that the title of Holt and Sabin to the land was perfect; the issue of the action was not doubtful; the aggregate amount of the liens they would have to pay if successful did not exceed $335.87, as the jury on the trial had found that they were entitled to recover of the defendant $515.16 as rents and profits; that the $800 was not a good offer, but a grossly inadequate price for Holt's interest in the land, which was worth $4,000; and that Sabin had not tried to find a purchaser, and was not acting for Holt in selling his land, but was jointly interested with Beachley in its purchase from him, but concealed this fact from Holt, and pretended to be acting in

his behalf. At this time Holt was about 70 years old, and the bill alleges that for 10 years prior to March 4, 1889, he was so feeble in mind and body that he was entirely unfit and unable to transact any business whatever, and from age and weakness possessed such a disposition that he was easily imposed upon, and implicitly trusted those he thought his friends, and that he relied upon Sabin as his attorney, friend, and adviser; but it also alleges that he walked all the way from Illinois to Beatrice, Neb., and made the contract for the commencement of his suit in the fall of 1880. Holt, who was ignorant of the value of his land, and of all the facts misrepresented by Sabin, was induced by his false representations to convey his interest in the land to Beachley for the $800, and under this conveyance the appellees hold a portion of the land and the proceeds of that not held by them.

After Holt made this conveyance, A. A. Smith, who was also one of his attorneys in prosecuting the action for the recovery of the land, wrote him three letters, the last of which was dated May 18, 1882, in which he stated to him that Beachley had purchased the land for the joint use of himself and Sabin; that the consideration paid by Beachley was inadequate; that it appeared from the records that Sabin had sold his own 24 acres of said tract for $500; that Smith himself had paid L. W. Billingsley $700 for the 40 acres of said tract owned by the latter; that Smith himself would have paid Holt $1,400 for the interest in said tract which was conveyed to Beachley, expecting to have doubled his money by such purchase; that Smith did not believe that Holt ever parted with his interest in the land for $800 with a knowledge of all the facts in the case, and inquired of Holt whether or not Sabin had ever notified him that, besides winning the land in the lower court, Sabin and Holt had been awarded $515 by the jury for the rents and profits of the premises in question.

On the 15th day of May, 1882, Sabin wrote and mailed Holt a letter, of which the following is a copy:

"Beatrice, Neb., May 15, 1882.

"Charles B. Holt, Esq., Flora, Ill. Dear Sir: Since writing, I heard that there were some parties here that intend to try and get you into some kind of litigation, and get the money you have away from you. I don't know that it is so, but I fear it; and I write to put you on your guard as a friend, and be watchful and careful. I would not have anything to do with any other parties here, because I think they want to find out where you are, and may get you into trouble. If I knew anything certain I will write you. I would keep out of their way. I don't like to mention names at present, but if I think it necessary will write you more particular. If you get any letters you might send them to me, and I will write you what is best to do.

"Your friend, as ever, R. W. Sabin."

The appellants knew nothing about these transactions until these letters of Smith and Sabin were discovered, after the death of Holt, in 1889. They offer to return to the appellees the $800 paid to Holt in 1882, with interest, and all taxes paid by them upon the land since that date, with interest, and ask to recover of them that portion of the land they still own, and the proceeds of the portion sold.

Nathan K. Griggs, Samuel Rinaker, Robert S. Bibb, and Julius A. Smith, for appellants.

Leander M. Pemberton, for appellees.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

SANBORN, Circuit Judge, (after stating the facts.) The basis of this suit is the fraudulent misrepresentation which induced the sale and conveyance of May 15, 1882. The relief sought, so far as these appellees are concerned, is the rescission of the conveyance and contract of sale, and the restoration of the parties to the condition in

which they would have been if the contract had never been made. An attorney or agent cannot hold property in which he becomes interested as a purchaser, while he pretends to negotiate the sale as the agent and friend of the vendor; and the glaring fraud the bill discloses entitled Mr. Holt to return the purchase price he had received, and to recover back the land he had conveyed, immediately upon the discovery of the fraud. This discovery, however, while it gave him the privilege, also imposed upon him the duty of electing then whether he would rescind or ratify his contract. When a vendor discovers that his purchaser has induced him to part with his property by fraud, he has the option to return the purchase price, and recover back his property, or retain the price and ratify the sale. To him the law justly gives the choice of the course he will pursue, but it demands of him that he make his election with diligence, promptly; and declares that such election, when once made, cannot be revoked or modified. He cannot speculate upon his option. He cannot hold his election in abeyance, so that he may subsequently rescind if the property rises, and ratify if it depreciates, in value. Indeed, he cannot, under the law, if he would, avoid an immediate election. If he would avoid his conveyance and repudiate his contract, he must promptly announce this intention, and return the consideration he received, to the end that the parties may be put in statu quo before subsequent transactions render such action impossible. If he does nothing; if he remains silent and takes no action,—his very silence and his retention and use of the purchase money for any considerable length of time after the disvovery of the fraud constitute a complete, irrevocable ratification of his contract, and make it as binding and effectual as though he had deliberately entered into it after full knowledge of all the facts, uninfluenced by any fraudulent practices. Thus, in Grymes v. Sanders, 93 U. S. 55, 62, Mr. Justice Swayne said:

"Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose, and adhere to it. If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred. He is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had before subsisted. These remarks are peculiarly applicable to speculative property like that here in question, which is liable to large and constant fluctuations in value. Thomas v. Bartow, 48 N. Y. 200; Flint v. Woodin, 9 Hare, 622; Jennings v. Broughton, 5 De Gex, M. & G. 139; Lloyd v. Brewster, 4 Paige, 537; Railroad Co. v. Row, 24 Wend. 74; Minturn v. Main, 7 N. Y. 220; 7 Rob. Pr. p. 432, c. 25, § 2; Campbell v. Fleming, 1 Adol. & E. 41; Sugd. Vend. (14th Ed.) 335; Diman v. Railroad Co., 5 R. I. 130."

Nor can a vendor industriously close his eyes, stop his ears, or refuse to believe the evidence of his senses, when notice of the fraudulent practices of a purchaser is placed before him, and thus escape from the application and effect of this principle of law. Notice of facts and circumstances which would put a man of ordinary intelligence and prudence on inquiry is, in the eye of the law, equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose. "Whatever is notice enough to excite attention, and put the party on his guard, and call for inquiry, is notice of everything to which such inquiry might have led. Where a person has suf-

ficient information to lead him to a fact, he shall be deemed conversant with it." Kennedy v. Green, 3 Mylne & K. 722; Wood v. Carpenter, 101 U. S. 135, 141; Parker v. Kuhn, 21 Neb. 413, 421–426, 32 N. W. Rep. 74; Wright v. Davis, 28 Neb. 479, 483, 44 N. W. Rep. 490.

The application of these principles to the facts disclosed by this bill is decisive of this case. The only facts alleged that are at all sufficient to be considered as ground for the relief sought are that Sabin, who was one of the vendor's attorneys, concealed the fact that he was jointly interested in the purchase, and misrepresented the amount required to be paid on account of the tax liens and the value of the vendor's interest in the land when he procured the deed to Beachley: but the appellants have seen fit to set forth in their bill, and thereby to admit, that Mr. Smith, who was also an attorney of the vendor, residing at Beatrice, Neb., equally interested with Sabin in, and equally conversant with, the pending action, and the land it involved, fully notified this vendor, in writing, in May, 1882, and within 40 days after he made the sale and deed to Beachley, of every material fact that had been concealed or misrepresented by Sabin. It is difficult to imagine more conclusive proof than this that the vendor then discovered the fraud. He was fully notified of it by an attorney who was employed to watch his interests, and who, he knew, had every means of knowledge; and this attorney referred him to the records of his county to substantiate his statements. These allegations of the bill are the equivalent of a positive averment that Mr. Holt had full knowledge of this fraud in May, 1882. What, then, was the action of Mr. Holt when this fraud was thus discovered, and what was its legal effect? He did not return the purchase money; he did not announce his intention to repudiate the sale; he did not seek to recover back his land, or to recover damages for the injury he had sustained; he did not complain of it, or notify his children or any one else of the fraud that had been perpetrated upon him; but he quietly retained and used his purchase money, and lived on in peace and silence for seven years and seven months, until he died; and the first complaint of this fraud is made by his heirs, more than eight years after its discovery. The course thus pursued by this vendor leads inevitably to the conclusion that, after learning all the facts, he deliberately elected and intended to keep his purchase money, and to stand by and ratify his sale; but, whatever may have been his intention, his silence during those seven years while the property conveyed was constantly changing in value and becoming a platted addition to a city, was an effectual and irrevocable ratification of his sale and deed, and binds him and these heirs who claim under him as conclusively as would an independent contract, deliberately made after full knowledge of all the facts. Neither he nor his heirs could thus play fast and loose with this contract for eight years after the discovery of the fraudulent practices. Long before his death all objections to it had been waived, and it had been irrevocably ratified by this action of the vendor, or, rather, by his failure to act; and upon this ground the decree below must stand.

There is another reason why this decree must be sustained. It

is that the action for relief on account of this fraud was barred by the statute of limitations of Nebraska. That statute provides that actions for relief on the ground of fraud can only be brought within four years after its discovery. Consol. St. Neb. p. 971, § 4548. The highest judicial tribunal of that state has twice decided, after exhaustive discussion and careful consideration, that the four years prescribed in this statute commence to run from the "discovery of the facts constituting the fraud, or facts sufficient to put a person of ordinary intelligence and prudence on an inquiry which, if pursued, would lead to such discovery." Parker v. Kuhn, 21 Neb. 413, 421--426, 32 N. W. Rep. 74; Wright v. Davis, 28 Neb. 479, 483, 44 N. W. Rep. 490. This construction of this statute commends itself to our judgment as sound and just, and it has been approved by the supreme court of the United States in the consideration of similar statutes. Burke v. Smith, 16 Wall. 390, 409; Kirby v. Railroad Co., 120 U. S. 130, 139, 7 Sup. Ct. Rep. 430.

In the courts of Nebraska remedies at law and in equity may be administered in a single action, and by the same court; the distinction between the forms of actions at law and suits in equity has been abolished. It follows that the vendor in this sale was barred by this statute of all relief in the courts of that state four years after he discovered this fraud, or in May, 1886.

In cases of concurrent jurisdiction, the federal courts, sitting in equity, consider themselves bound by the statutes of limitation which govern courts of law in like cases, and this is rather in obedience to the statute of limitations than by analogy. In many other cases they act upon the analogy of the statutory limitations at law. Courts of equity generally act or refuse to act in analogy to the statute, and they will not be moved to set aside a fraudulent transaction at the suit of one who has been quiescent during a period longer than that fixed by the statute of limitations after he had knowledge of the fraud, or after he was put upon inquiry with the means of knowledge accessible to him. Wagner v. Baird, 7 How. 234, 257; Godden v. Kimmell, 99 U. S. 201, 210; Burke v. Smith, supra; Kirby v. Railroad Co., supra; Boone Co. v. Burlington & M. R. R. Co., 139 U. S. 684, 692, 11 Sup. Ct. Rep. 687. This suit was commenced January 3, 1891. Mr. Holt, under whom appellants claim, discovered the fraud which is the basis of the suit in May, 1882. Every action in the courts of Nebraska for relief on this account was barred more than four years before this suit was commenced. It follows that the court below properly refused to be moved to set this sale and deed aside after the victim of the fraud had remained quiescent for a period longer than that fixed by the statute after he discovered it.

The rule that length of time is no bar in equity to a suit for relief from an actual fraud or a constructive trust clearly proved, which has been fraudulently and successfully concealed from the party aggrieved, has no application to this case. One of the qualifications of this rule is that the facts constituting the fraud or trust must have been fraudulently and successfully concealed from the injured party. Badger v. Badger, 2 Wall. 87, 92. In the case we are now considering the facts constituting the fraud were all disclosed to the party injured

by one of his attorneys in May, 1882. That the perpetrator of the fraud in the same month, with intent to conceal it, wrote him the letter of May 15, 1882, and advised him to have nothing to do with any parties who might write him from Beatrice, lest they should rob him of his money; and that, trusting to this letter and its writer, he did not believe in the existence of the facts disclosed by his attorney, Smith, and made no inquiries regarding them,—does not show a successful concealment of these facts. Sabin's letter did not—indeed, it could not—conceal the facts, because they were fully disclosed by the letters of Smith. They were then known to Mr. Holt, and the letter of Sabin could not make them unknown. It could not do more than persuade him, with knowledge of the facts, to ratify the contract, and retain the purchase price; and, if he did this, he has no cause of action. Indeed, there was nothing in the letter which either denied or explained any of the statements in the letter of Smith, and, if there had been, this would have been no excuse for failing to investigate or verify them. The victim of a fraud, fully and credibly informed of all the facts which constitute it, cannot obstinately refuse to believe or verify his information, and then plead his own negligence and incredulity to remove the bar of the statute, and prove that he made no discovery of the fraud. Nor can he, after the fraud is clearly disclosed to him by others, escape the bar of the statute by the plea that the perpetrator himself did not disclose it. As was well said by Judge Caldwell in Singer v. Jacobs, 11 Fed. Rep. 563:

"When the facts and circumstances are such as to put a reasonable man upon inquiry, that obligation is not satisfied by an inquiry addressed to the chief actor in the suspected fraud, who has every motive for concealing the truth, when better and more reliable sources of information are open to him."

See, also, Wood v. Carpenter, 101 U. S. 135, 139–143, and cases there cited.

The allegations in the bill that the vendor, Holt, was for 10 years before his death old, credulous, and so feeble in mind and body that he was unfit to transact business, are not sufficient to prevent the running of the time named in this statute. The statute itself prescribes the disabilities which shall have this effect. They are infancy, coverture, insanity, and imprisonment. Consol. St. Neb. p. 971, § 4553. "Expressio unius est exclusio alterius," and it is not the province of the courts to add to these disabilities either age, infirmity, or credulity. These allegations of the bill do not amount to an averment that this man was insane, or non compos mentis, for Lord Hardwicke says that—

" 'Being non compos'—of unsound mind—are certain terms in law, and import a total deprivation of sense. Now, weakness does not carry this idea along with it; but courts of law understand what is meant by 'non compos' or 'insane,' as they are words of determinate signification." Ex parte Barnsley, 3 Atk. 168.

The law, therefore, must deal with this vendor and his acts on the presumption that he was a man of ordinary intelligence and prudence, because, as was well said by Verplanck, Senator, in Stewart's Ex'r v. Lispenard, 26 Wend. 303:

"To establish any standard of intelligence or information beyond the possession of reason in the lowest degree, as in itself essential to legal capacity,

would create endless uncertainty, difficulty, and litigation; would shake the security of property, and wrest from the aged and infirm that authority over their earnings or conveyances which is often their best security against injury and neglect."

Besides, it appears from this bill that within these 10 years during which this vendor is alleged to have been so feeble in mind and body that he was unfit to transact business he was strong enough in body and vigorous enough in mind to walk from his home in Illinois to Beatrice, Neb., and make the contract with his attorneys for the prosecution of the action against the holder of the tax title, which resulted in the recovery of this land, and we should hesitate long to establish the rule that a man of such strength and ability was incapable of transacting his own business.

The result is that this vendor, by his retention and use of the purchase money, and his silence and acquiescence in the sale of his land for more than seven years after he discovered the fraud which induced it, irrevocably ratified that sale, and neither he nor his heirs can now be heard to repudiate or rescind it; and, moreover, a court of equity, which acts or refuses to act in analogy to the statute of limitations, will not now be moved to set aside this sale after this vendor has remained silent for a longer period after he discovered the facts constituting the fraud than the time limited by the statutes of Nebraska for the commencement of actions for relief on account of it.

The decree therefore is affirmed, with costs.