## SCHEFTEL v. HAYS.

### (Circuit Court of Appeals, Eighth Circuit. October 30, 1893.)

#### No. 295.

1. RESCISSION OF SALE—FRAUD—DILIGENCE.
   A vendee entitled to rescind his contract for fraud must act promptly, especially in times of great speculative activity; and where, on discovering the fraud, he merely notifies the vendor of an intention to claim damages, and does not elect to rescind until the lapse of three years, when the land has depreciated to a fraction of its former speculative value, it is then too late to avail himself of this remedy.

2. SAME—RATIFICATION—ACQUIESCENCE.
   A victim of a fraudulent sale who has received notice sufficient to put him on his guard cannot evade the duty of speedy and diligent inquiry by merely calling on the chief perpetrator, whose interest it is to conceal the facts, to reiterate or prove his false statements; and such reiteration does not prevent the vendee's delay from operating as a ratification of the contract, or interrupt the running of limitations, when a diligent inquiry at independent sources would have fully disclosed the fraud.

3. SAME—FEDERAL COURTS—STATE STATUTES OF LIMITATION.
   A federal court, sitting in equity, will not rescind a fraudulent sale when the vendee has remained quiescent after discovering the fraud for a period longer than that fixed by the state statute of limitations.

Appeal from the Circuit Court of the United States for the District of Kansas.   Affirmed.

J. D. Houston and W. H. Boone, for appellant.

R. R. Vermilion and Kos Harris, for appellee.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

SANBORN, Circuit Judge.   This is an appeal from a decree dismissing a bill brought by Adolph Scheftel, the appellant, to rescind a contract of purchase of 320 acres of land from the appellee, Leopold Hays, and to recover the purchase money, $27,200.   The purchase was made April 19, 1887.   The land purchased was 320 acres eight miles southeast of the city of Wichita, in the state of Kansas.   The appellant was a leather dealer in New York city, and was accustomed to dealing in stocks and bonds of corporations and other property.   The appellee was a dealer in leather at Wichita, and a customer of the appellant.   In the autumn of 1886 the appellant had purchased 40 acres of land a few miles distant from the city of Wichita for $200 an acre, at the suggestion of the appellee, under an agreement with him that he should have 45 per cent. of the profit, and should bear 45 per cent. of the loss, resulting from the purchase and resale of the tract.   This tract had been sold again for $400 an acre before the purchase of this 320 acres was made.   In the years 1886 and 1887 there was an era of wild speculation in lots and lands in and around Wichita, and their price was not measured by their intrinsic value, but by the height of the speculative fever that possessed the purchasers.

March 5, 1887, the appellee purchased the land in suit of one W. J. Brown, through the latter's agents, Hardy Solomon & Co., for $50 an acre, but he obtained and recorded a deed to himself which recited a consideration of $75 an acre. About April 19, 1887, the appellee told the appellant that he had paid $75 an acre for this land; that it was within five miles of the center of the city of Wichita, when it was in fact eight miles distant from that point, and that it was very cheap at $85 an acre, and thereby induced him to purchase it at that price, under an agreement that the appellee should have one-third of the profits, and bear one-third of the losses, resulting to the appellant from the purchase. At some time before May 3, 1887, the appellant was informed by a Mr. Lambert, who was a brother-in-law of the appellee, that the latter had paid but $50 an acre for this land, and that he was a big scamp, a scoundrel, and a cheat. Mr. Scheftel immediately investigated the transaction, and had the land appraised by several parties, all of whom reported before June 7, 1887, that this land was hardly worth $50 an acre. The appellant and his confidential clerk wrote three letters to the appellee in May and June, 1887, in which they informed him that Mr. Scheftel had been told that he (Hays) had paid but $50 an acre for the land, and that Mr. Scheftel had had the appraisals we have mentioned made, and that he would claim to recover the difference between the $50 and the $75 an acre for the misrepresentation if the information he had received proved correct. June 16, 1887, the appellee wrote a letter to Mr. Scheftel in which he reiterated the statement that he paid $75 an acre for the land, and inclosed a false certificate to that effect, which he had procured from W. J. Brown, his vendor. About the same time he caused Mr. Solomon, the agent who sold the property to him, to write to the appellant that the record correctly disclosed the transaction. The appellant testified that these letters removed his suspicions, and that thereafter, until shortly before this suit was commenced, he believed that the appellee had told him the truth. He admitted, however, that in a conversation with the agent, Solomon, in the fall of 1888, he tried to find out from him what Mr. Hays paid for this land, and that Solomon refused to tell him, because he said he intended to run for mayor of Wichita, and did not want to make enemies. Solomon himself testified that the appellant told him in a conversation in October, 1887, that Hays had defrauded him; that he had found out that the land was seven or eight miles from Wichita, and that Hays paid only $50 an acre for it. A Mr. Levy also testified that the appellant made the same statements to him in a conversation in January, 1888. From 1887 until the commencement of the suit the appellant leased this land, received the rents from it, and paid various liens upon it as they became due, to the amount of several thousand dollars. Meanwhile the fever of speculation at Wichita gradually subsided. In 1887 and 1888 prices remained unchanged, but there were few sales. On November 13, 1890, the market value of this land had receded to that of ordinary farm land, about $25 an acre. There

was no sale for city lots, and no speculative value to lands about the city of Wichita, and the appellant then brought his suit to rescind his contract of purchase.

The glaring fraud perpetrated on the appellant gave him the right the moment he discovered it to rescind this purchase. There was, however, no obligation upon him to exercise that right. He had the option to reconvey the land, and recover his purchase money, or to retain the property and affirm the contract. Justly and wisely the law gives him his choice, but at the same time it imposes on him the duty of making his election speedily. It not only imposes this duty, but it compels its performance. If he elects to rescind, it demands that he shall return the property he has obtained, and give notice of his election promptly upon the discovery of the fraud, to the end that the parties may be placed in statu quo. Nor can he avoid an election by delay or inaction, for silence and acquiescence are fatal to the right to rescind. They are an election to ratify the contract.

There are no cases in which the effect of the application of this principle is more salutary than in those involving speculative investments. A court of equity rescinds a fraudulent contract, on the ground that it can work no injustice to place both parties in the situation in which they were before the contract was made. Where the value of property is largely speculative and subject to rapid changes, this can only be perfectly done soon after the sale is perfected. If the fraud is discovered while the value of the property remains substantially as it was when the sale was made, a rescission of the contract then is just and equitable. But if the purchaser waits for years after he discovers the fraud, and until the property has greatly depreciated in value, and then first seeks rescission, he asks the court to burden his vendor with an unnecessary loss caused by his own inaction. Thus, in the case before us, in May, 1887, when the appellant discovered the fraud of which he complains, the land in dispute might undoubtedly have been readily sold for $50, perhaps for $75 an acre. If he had then given notice of his election to reconvey the land, and sought a return of his money, the appellee might have sold the land, and have repaid the purchase money without serious loss. But in 1890, after three years of depreciation, the land could not have been sold for more than 50 per cent. of its market value in 1887, and a rescission then made must entail upon the appellee a loss of thousands of dollars that is the direct result of the appellant's delay.

Nor is the reason for this delay difficult to divine. Under date of June 6, 1887, the appellant notified Mr. Hays that, if the report that he had bought the property for $50 instead of $75 an acre was correct, he would certainly claim the difference, $25 an acre, from him. Evidently he did not then intend to rescind this contract, but to affirm it, and trust to the law for his damages, because he undoubtedly then thought that the rapidly advancing prices of real estate would soon make the land more valuable than the money he had paid for it. If his anticipations had been real-

ized, if the market value of the land had advanced in 1887 as it did in 1886, he would probably never have changed his mind,—he would never have elected to rescind. Indeed, he never did do so until his agent had informed him, in 1890, that this land had depreciated to $25 an acre. Then it was that for the first time he concluded that this was a losing speculation, and that he preferred the $27,200, and interest, to the depreciated property. For more than three years after his discovery of the fraud, and for three years too during which the fever of speculation at Wichita was succeeded by the chill of depression, and the market value of this and like land depreciated at least 50 per cent., he attempted to speculate on his option. He stood holding the land, and receiving its rents, determined to realize a profit if its value advanced, yet ready to rescind the purchase, return the land, and charge the appellee with its loss if its value receded. Its value did recede, and he now asks a court of equity to impose upon the appellee the loss which the risk he took entailed. The answer is that good faith and reasonable diligence are indispensable to obtain relief in equity; that it is neither just nor equitable thus to impose upon a vendor the losses of an unfortunate risk the vendee voluntarily took in order to secure to himself its possible benefits; and that a vendee who is defrauded has no right to speculate on his option to rescind the purchase. He cannot by silence and inaction, after discovery of the fraud, secure to himself the possible profits of the purchase through a series of years, and when the chance of profit is gone, and losses are assured, successfully appeal to a court of equity to impose the latter upon his vendor. Delay, vacillation, silence, or acquiescence for any considerable period of time after the discovery of the fraud are fatal to the right to rescind a fraudulent contract. They effect an irrevocable ratification of the agreement. It was too late for the appellant, three years after he discovered the material facts that disclosed this fraud, to revoke the ratification his acquiescence had effected. Rugan v. Sabin, 3 C. C. A. 578, 53 Fed. Rep. 416, 418; Kinne v. Webb, 4 C. C. A. 170, 54 Fed. Rep. 34, 38; McLean v. Clapp, 141 U. S. 429, 12 Sup. Ct. Rep. 29; Grymes v. Sanders, 93 U. S. 55, 62; Oil Co. v. Marbury, 91 U. S. 587; Hayward v. Bank, 96 U. S. 611, 618; Follansbe v. Kilbreth, 17 Ill. 522, 526, 527; Jones v. Smith, 33 Miss. 215, 268; Estes v. Reynolds, 75 Mo. 563, 565; Johnston v. Mining Co., 39 Fed. Rep. 304.

There is another fatal objection to the maintenance of this bill. This is a suit of which the court below has concurrent jurisdiction with the courts of the state of Kansas. In such a case the national courts, sitting in equity, will not be moved to set aside a fraudulent transaction where the complainant has remained quiescent after the discovery of the fraud for a period longer than that fixed by the statute of limitations of the state. Rugan v. Sabin, 3 C. C. A. 578, 53 Fed. Rep. 420; Wagner v. Baird, 7 How. 234, 237; Godden v. Kimmell, 99 U. S. 201, 210; Burke v. Smith, 16 Wall. 390, 401; Kirby v. Railroad Co., 120 U. S. 130, 139, 7 Sup. Ct. Rep. 430; Boone

Co. v. Burlington & M. R. R. Co., 139 U. S. 684, 692, 11 Sup. Ct. Rep. 687.

The statutes of Kansas provide that no civil action for relief on the ground of fraud (other than for the recovery of real property) shall be brought unless it is commenced within two years after the discovery of the fraud. Gen. St. Kan. 1889, par. 4095. The fraud in this case was discovered in 1887. No action was commenced until November 13, 1890. The suit was barred in the courts of Kansas by this statute of limitations, and the court below properly refused to permit it to be maintained there.

It has not escaped our notice that counsel for appellant seek to avoid the effect of the rules to which we have adverted on the ground that no time runs against the victim of a fraud while its perpetrator fraudulently and successfully conceals the facts that would disclose it, and that the letter of Hays repeating his false representations, and inclosing the false certificate of his vendor, together with the false statement he caused the agent, Solomon, to make in his letter to the appellant, did prevent the latter from discovering the facts until 1890. This ground, however, is untenable for at least three reasons:

First. Notice of facts and circumstances which would put a man of ordinary prudence and intelligence on inquiry is, in the eye of the law, equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose. The appellant admits that as early as June, 1887, he was informed that the appellee had paid but $50 an acre for this land; that he was a scamp, a scoundrel, and a cheat; and that he then caused several parties to appraise the land, all of whom agreed that it was hardly worth $50 an acre. This was ample notice to put an ordinarily prudent man on inquiry, and if the inquiry had then been prosecuted with the diligence exercised in 1890, after the property had depreciated in value, it would undoubtedly have disclosed the same facts now proved. Rugan v. Sabin, 3 C. C. A. 578, 53 Fed. Rep. 419, and cases cited.

Second. The victim of a fraud, who has received notice enough to excite his attention and put him on his guard, cannot evade the duty of speedy and diligent inquiry by merely calling on the chief perpetrator, whose interest it is to conceal the facts, to reiterate or prove his false statements. He can no more escape a ratification of the contract and the bar of the statute of limitations by obtaining a repetition of the misrepresentation and fraudulent proofs in support of it from him who made it, and then refusing to verify them from independent and proper sources of information, than he can by relying on the truth of the first misrepresentation, and refusing to make any inquiry after notice of facts and circumstances indicating a fraud. A diligent inquiry is an honest inquiry,—one reasonably calculated to discover, not to conceal, the facts,—and an inquiry of the perpetrator of the fraud alone is one plainly calculated to conceal them. Rugan v. Sabin, supra, 421; Singer v. Jacobs, 11 Fed. Rep. 559, 563; Wood v. Carpenter, 101 U. S. 135, 139, 143.

Third. A careful and patient examination of all the evidence convinces us that the appellant was not in fact lulled into security by the letter and fraudulent proofs of Hays in 1887. It convinces us that he was fully notified in that year of all the material facts regarding this fraud that are proved in this suit. He testifies himself that after he received the letter of June 16, 1887, from the appellee, the certificate of his vendor, and the letter of the agent that the record correctly disclosed the transaction, he still tried to find out from this agent in conversation what Hays had really paid for the land, and the agent refused to tell him, because he said he wanted to be a candidate for mayor of Wichita, and desired to make no enemies. This is very persuasive evidence that Mr. Scheftel's suspicions had not been allayed, and this answer of the agent certainly did not much tend to allay them. Two disinterested witnesses testified that, in the autumn and winter of 1887–88, Mr. Scheftel told them that Hays had swindled him in the sale of this land; that he had represented that he had paid $75 an acre, when he paid but $50 an acre for it; and that he had represented that it was from two to four miles nearer the city than it actually was. This testimony, and the undisputed facts that he was notified of the misrepresentation regarding the price Hays paid for the property, and that he caused appraisals of it to be made in May and June, 1887, in our opinion, conclusively establish the fact that he fully discovered the fraud in that year.

The decree below is affirmed, with costs.