**CITY OF ROSWELL, N. M., v. MOUNTAIN STATES TELEPHONE & TELE-GRAPH CO. ***

No. 1155.

Circuit Court of Appeals, Tenth Circuit.

June 24, 1935.

*Rehearing denied Aug. 19, 1935.

380

H. C. Buchly and O. O. Askren, both of Roswell, N. M. (Neil B. Watson, of Roswell, N. M., on the brief), for appellant.

E. R. Campbell, of Denver, Colo. (Elmer L. Brock, John P. Akolt, and Milton Smith, all of Denver, Colo., on the brief), for appellee.

Before LEWIS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

The city of Roswell instituted this action in the state court to enjoin the Mountain States Telephone & Telegraph Company, hereinafter called the company, from further maintaining its poles, wires, appliances, and equipment in the streets, alleys, and other public places of the city and to require their removal. It was alleged that the company owned a franchise which expired on May 24, 1919, and that it continued thereafter to occupy the streets and alleys without right. Treating such occupancy as a nuisance, a mandatory injunction in the nature of ouster was appropriately prayed.

The suit was seasonably removed to the United States court on the ground of diverse citizenship. The company thereafter answered pleading a grant under chapter 141, Laws of New Mexico 1909, to use and occupy the streets and alleys;

a right to such use under Ordinance No. 278, dated February 24, 1914; a prescriptive right or easement subject to reasonable police regulations; laches; limitation; lack of equity; prematurity of the suit and contravention of the Commerce Clause of the Constitution of the United States (article 1, § 8, cl. 3).

These are the facts upon which the rights of the parties rest. The town of Roswell granted a franchise to the Roswell Telephone & Manufacturing Company on May 24, 1894. It was for a fixed period of twenty-five years and by its own provisions expired May 24, 1919. Early in 1909 the Colorado Telephone Company constructed a long-distance telephone line into the city of Roswell and there connected it with the exchange of the local company having the franchise. In making that connection it erected poles, lines, and other equipment at a cost of approximately $10,000, to which the city registered no objection. About two years later, that is on or near March 21, 1911, the Colorado Company purchased the plant, poles, wires, fixtures, and equipment of the local company and within a few months thereafter made additions and improvements in the system within the municipality at an outlay of $61,000. At the time of such purchase and as a part of the transaction, the local company executed a written assignment of its franchise which was filed for record in the county on April 1, 1911. The defendant company was organized on July 17, 1911, by a consolidation of the Colorado Telephone Company and the Tri-State Telephone & Telegraph Company. It then took over all the property, equipment, and businesses of the two former companies, including the telephone system at Roswell. The franchise was assigned to it and the assignment was duly recorded. In the latter part of 1913 the city attorney had a controversy with the company respecting telephone rates, and in connection therewith he and the mayor stated to a representative of the company that it had no right to occupy the streets and alleys because the franchise was not assignable. In reply the spokesman of the company stated that it did not rely upon the franchise; that instead, it relied upon chapter 141, Laws of 1909, for its right and authority to maintain its poles, wires, and equipment in the streets and alleys. The city passed an ordinance in February, 1914 requiring the company to place its wires and cables in a specified area in underground conduits or on combination ornamental poles to be located at places designated by the city engineer and approved by the council, with the provision that the city could maintain its street light fixtures on such poles free of charge. The company erected and has since maintained the ornamental poles and the city has maintained its light fixtures thereon without cost. The city has from time to time directed the places at which certain poles should be placed and the manner in which cables and leads should be maintained at certain places; and the company has complied with the directions. The increase in investment in equipment after the expiration of the franchise and prior to March 31, 1932, was $64,256.38, and the reasonable value of the plant on the latter date was $291,100.59. The company has for some time furnished the city free of cost wires in about 198 feet of cable near the center of the city for the operation of traffic signals, and in May, 1931, the city attached wires to the company's pole line between the city's water plant and its pumping station, a distance of about 6,000 feet, which has since been used to control the station. The company furnishes the city free of charge a certain number of telephones and use of its system for fire, police, and alarm purposes. The company and its predecessors have paid all state, county, and city taxes upon the property within the city, and from 1920 to 1933 it has paid annually a license tax for the privilege of conducting its telephone business.

The court concluded that the act of 1909 granted to the company the right to maintain its poles, wires, and other equipment in the streets, alleys, and other public places for the conduct of its business; that no franchise from the city was necessary to the exercise of that right; and that none of the other defenses interposed was well taken. The bill was accordingly dismissed and this appeal draws that action in question.

■■ Chapter 141, Laws of 1909, to which reference has been made, is entitled "An Act relating to Corporations for the Purpose of Generating, Producing, Transmitting, Distributing, Selling or Utilizing Gas, Electricity or Steam for Lighting, Heating, Power or other Purposes, and Providing Penalties for Interference with

382

their Pipes, Wires, Meters or other Appliances." The relevant sections provide:

"Section 1. Corporations for the generation, production, transmission, distribution, sale or utilization of gas, electricity, or steam, for lighting, heating, power, manufacturing or other purposes may be organized under the general incorporation laws of this Territory. In addition to the statements now required by law the certificate of incorporation of every such corporation hereafter organized for one or more of such purposes shall set forth: the location of its plant or plants, and the general course and route of its line or lines of pipes, wires, cables or conduits stating the cities, towns or counties where its operations are to be carried on.

"Sec. 2. Such corporations may acquire water rights for power plants or other purposes either by purchase, by appropriation under the laws of this Territory or of the United States or by acquiring rights of persons or corporations having made such appropriations or filed applications therefor, and are authorized to place their pipes, poles, wires, cables, conduits, towers, piers, abutments, stations and other necessary fixtures, appliances and structures, upon or across any of the public roads, streets, alleys, highways and waters in this Territory subject to the regulation of the County Commissioners and local municipal authorities.

"Sec. 3. The County Commissioners of the several counties are hereby authorized to permit such corporation to use the public highways and the streets and alleys of unincorporated towns for their pipes, poles, wires, cables, conduits, towers, transformer stations and other fixtures, appliances and structures: Provided, That such use shall not unnecessarily obstruct public travel and such County Commissioners and municipal authorities of incorporated cities and towns are hereby authorized to grant franchises to corporations for such purposes within their respective jurisdictions."

Chapter 50, Laws 1912, amended section 1 by omitting therefrom the provision requiring a statement concerning the location of the plant and the route of the lines, wires, cables, and conduits, but the amendment has no significance here and may be dismissed without further consideration. The statute in its present form is found in sections 32-401 to 32-403, Comp. St. N. M. 1929. Some argument is advanced as to whether a telephone company comes within its purview. It does not name the corporations embraced therein, but includes them by reference to their functions. It is provided that those created for the purpose of generating, producing, transmitting, distributing, selling, or utilizing gas, electricity, or steam for lighting, heating, power, manufacturing, or other purposes, may be organized under the general incorporation laws of the then territory. The parties stipulated and the court expressly found that the company does and its predecessors did generate and produce electric energy and transmit it over wires for the rendition of telephone service to the public, both local and long distance. We are told that there is no other statute in New Mexico which expressly authorizes the incorporation of a telephone company and our research has failed to disclose one. Section 6 of article 11 of the Constitution of the state authorizes the State Corporation Commission to issue charters to domestic corporations and to grant permits to foreign corporations to transact business within the state; and section 7 expressly empowers the Commission to fix, regulate, and control telephone rates. Ever since New Mexico became a state in 1912, the Commission has construed the statute in question to include telephone companies and has administered it in that manner in issuing domestic charters, in granting permits to foreign corporations, and in the exercise of its constitutional power with respect to rates. The Legislature has convened repeatedly while the administrative body thus interpreted the statute without taking action to indicate its disapproval of that construction. The long interpretation of a statute by the executive authority charged with its administration is not binding upon a court, but it is persuasive and will not be lightly overturned if the act is of doubtful meaning. Repeating that which had been said many times, we have so held. Cully v. Mitchell (C. C. A.) 37 F.(2d) 493; Whitebird v. Eagle-Picher Lead Co. (C. C. A.) 40 F.(2d) 479; Skeen v. Lynch (C. C. A.) 48 F.(2d) 1044; United States v. La Motte (C. C. A.) 67 F.(2d) 788. In the absence of an expression by the Supreme Court of the state, we have no difficulty in reaching the conclusion that a telephone company which generates electric

energy for the conduct of its business comes within the statute.

■ The next inquiry presenting itself is whether the act constitutes a direct grant of power from the state to the company to use and occupy the streets and alleys without obtaining a franchise from the city. The authorities place beyond question that title to the streets and alleys of a municipality is in the first instance vested in the state. It may make a direct grant of the right to use and occupy them or it may delegate that power to the municipality, but unless and until it is delegated the municipality has no proprietary authority to grant a franchise for such purpose. Some states have made direct grants and others have delegated that power to municipalities. We had occasion recently to review some of the authorities showing how certain states were divided into the two categories. City of Tulsa v. Southwestern Bell Telephone Co. (C. C. A.) 75 F.(2d) 343. The wisdom of either method is a matter of public policy with which we are in no wise concerned. Our task is to ascertain the group into which the statute under consideration places New Mexico. Approach to that question must be made having in mind that the right to use streets and alleys for a permanent purpose is a special franchise and must be strictly construed in favor of the public and against the donee because nothing passes except by clear language to that effect. Griffin v. Oklahoma Natural Gas Corp. (C. C. A.) 37 F.(2d) 545; State of Oklahoma v. Handy (C. C. A.) 71 F.(2d) 697 and authorities there cited.

■ The first section of the act contains nothing in the nature of a grant. It deals exclusively with the organization of corporations and has no reference to their right or power after being incorporated. Section 2 authorizes corporations thus formed to place their poles, wires, cables, conduits, fixtures, appliances, and structures upon or across public roads, highways, streets, and alleys subject to regulation of the county commissioners and the municipal authorities. Section 3 provides that the county commissioners of the several counties are authorized to permit the use of the highways and the streets and alleys in unincorporated towns, conditioned that such use shall not unnecessarily interfere with public travel. It is then provided that the county commissioners and the municipal authorities of incorporated cities and towns are authorized to grant franchises to corporations for such purposes within their respective jurisdictions. The two sections must be construed together so that both will have effect and neither perish by judicial interpretation if that can be done without violating the plain language used or transgressing the manifest legislative intent. That canon of construction is so widely recognized that it requires neither extended discussion nor the citation of authorities. Giving it appropriate weight and keeping in mind the rule that a grant of the nature in question must be strictly construed against the donee, it seems reasonably clear that the act authorizes a city to grant franchises to use the streets and alleys and the grant from the state contained in section 2 becomes effective if and when a franchise is obtained from the municipality. Or to state it otherwise, the state delegated to the municipality the power to grant such franchises and gave its consent to the use of the streets and alleys when that of the city has been obtained through such a franchise. The grant is extended upon that condition and comes into play upon that eventuation. The franchise referred to must relate to the right to use the streets and alleys. Section 3 deals with such use and then provides that the municipal authorities are authorized to grant franchises for such purpose, indubitably having reference to the right to use the streets and alleys. If it be held that the statute constitutes a direct grant from the state to the company, thereby eliminating the necessity to secure a franchise from the city, the provision authorizing municipal authorities to grant franchises for that purpose becomes utterly meaningless. What possible need could there be for a franchise if the grant emanates directly from the state, its original residuum? None. It is urged with earnestness that the provision authorizing municipalities to grant franchises relates to the exercise of the police power with respect to the manner in which the streets and alleys shall be used. The term franchise usually means a grant of the right to use highways, streets and alleys. Griffin v. Oklahoma Natural Gas Corp., supra. And in the absence of anything indicating that the legislature intended to use it otherwise,

we must assume that it was used in that generally accepted sense. More, the exercise of the police power in regulating the manner in which streets and alleys shall be used is ordinarily accomplished through ordinances and resolutions, not franchises. While the language used in the statute is inapt and not entirely free from uncertainty, we think that when both sections are considered together in their proper relation to each other and to the subject-matter, municipalities are vested with delegated power to grant franchises for the use of their streets and alleys for the purpose of maintaining telephone poles, wires, and other equipment and that the consent of the state to such use becomes effective when such a franchise is obtained. That conclusion seems to find support at least by persuasive analogy in Bankers' Trust Co. v. Raton, 258 U. S. 328, 42 S. Ct. 340, 66 L. Ed. 642; and Memphis v. Postal Tel. Cable Co. (C. C. A.) 145 F. 602.

■ The second asserted right rests upon an ordinance enacted by the municipality in February, 1914. It authorized and permitted any person, firm, or corporation owning and operating a telephone system within the city to lay its wires in conduits or to run them upon combination light and support poles to be at least thirty feet in height above the sidewalk and placed within the curb line at such intervals as should be designated by the city engineer. It contained other provisions unnecessary to detail. The ordinance did not name the company, but reference was necessarily made to it because it was the only one owning and operating a telephone there at the time. But it cannot generate a vested right to the perpetual use of the streets and alleys because the company then held a franchise. It is true that the mayor and city attorney stated to a representative of the company in 1913 that the franchise was not assignable and in consequence of that fact the company had no rights in the streets; that the representative replied that the company did not rely upon the franchise; that, instead, it depended upon the statute of 1909, but both statements were mere informal declarations made in the course of parley respecting rates. They were not statements in conference for the discussion of the rights of the company to continued occupancy of the streets. The ordinance did not vest the company with rights which survived the expiration of the franchise.

■ It is said that the suit is barred by the statute of limitation. Section 83-118, Comp. St. N. M. 1929, is relied upon to sustain the contention. It provides: "No action or suit shall be brought to call in question any privilege or franchise granted by any municipal corporation, unless the same shall be brought within six years after the same shall have been granted, or claimed to have been granted, and any such privilege or franchise heretofore granted by any municipal corporation shall, after six years from the date of the granting of the same, or within six years after the same shall have been claimed to have been granted, shall be deemed valid in all respects." Unless a general statute of limitation expressly provides otherwise, it usually operates against a municipality. Metropolitan R. Co. v. Dist. of Columbia, 132 U. S. 1, 10 S. Ct. 19, 33 L. Ed. 231; Garcia v. United States (C. C. A.) 43 F.(2d) 873. The contention in reality is that the action should be stayed on account of laches, because laches as distinguished from limitation usually applies to proceedings in equity. Hughes v. Reed (C. C. A.) 46 F.(2d) 435. It is a defense controlled by equitable considerations. Columbian Nat. Life Ins. Co. v. Black (C. C. A.) 35 F.(2d) 571, 71 A. L. R. 128. Its application does not rest exclusively upon lapse of time. Southern Pac. Co. v. Bogert, 250 U. S. 483, 39 S. Ct. 533, 63 L. Ed. 1099; Clarke v. Boysen (C. C. A.) 39 F.(2d) 800; Standard Oil Co. of Colorado v. Standard Oil Co. (C. C. A.) 72 F.(2d) 524. A court of equity is not bound by a statute of limitation, but in the absence of extraordinary circumstances it usually grants or withholds relief in analogy to it. This excellent statement of the rule, followed many times since, is contained in Kelley v. Boettcher (C. C. A.) 85 F. 55, 62: "In the application of the doctrine of laches, the settled rule is that courts of equity are not bound by, but that they usually act or refuse to act in analogy to, the statute of limitations relating to actions at law of like character. Rugan v. Sabin, 10 U. S. App. 519, 534, 3 C. C. A. 578, 582, and 53 F. 415, 420; Billings v. Aspen Mining & Smelting Co., 10 U. S. App. 1, 62, 2

C. C. A. 252, 262, 263, and 51 F. 338, 349; Bogan v. Mortgage Co., 27 U. S. App. 346, 357, 11 C. C. A. 128, 135, and 63 F. 192, 199; Kinne v. Webb, 12 U. S. App. 137, 148, 4 C. C. A. 170, 177, and 54 F. 34, 40; Scheftel v. Hays, 19 U. S. App. 220, 226, 7 C. C. A. 308, 312, and 58 F. 457, 460; Wagner v. Baird, 7 How. 234, 258 [12 L. Ed. 681]; Godden v. Kimmell, 99 U. S. 201, 210 [25 L. Ed. 431]; Wood v. Carpenter, 101 U. S. 135, 139 [25 L. Ed. 807]. The meaning of this rule is that, under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after the time fixed by the analogous statute of limitations at law; but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. The practical result is that a suit in equity for relief on the ground of fraud would not be barred by laches in the state of Colorado in less than three years after the discovery of the fraud, unless unusual circumstances made it inequitable to allow its prosecution. Some of the circumstances which will induce a court of equity to apply the doctrine of laches in a shorter time than that fixed by the statute are the destruction of the muniments of title, the death or removal of parties, the number of innocent purchasers who may be affected, radical changes in the condition and value of the property, and its speculative character. Lemoine v. Dunklin County, 10 U. S. App. 227, 239, 2 C. C. A. 343, 348, and 51 F. 487, 492. When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the bill or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches; and, when such a suit is brought after the statutory time has elapsed, the burden is on the complainant to show, by suitable averments in his bill, that it would be inequitable to apply it to his case."

It, therefore, is pertinent to inquire whether the doctrine can be invoked here. The statute has for its manifest purpose to fix a time within which the validity of a franchise or privilege granted by a municipality may be challenged and to give stability to such franchise or privilege after the expiration of that period. Agua Pura Co. v. Las Vegas, 10 N. M. 6, 60 P. 208, 50 L. R. A. 224. But it is limited to express grants from a municipality and has no reference to an asserted grant under a state statute, nor to an implied prescriptive right predicated upon long use. No express franchise or privilege granted by the city is involved here. The suit does not challenge a right of that kind. On the contrary, the contention of the city is that such a franchise is essential to the use of the streets and that the company has none. Neither does the general statute of limitation, section 83-122, Comp. St. N. M. 1929, lend the company support. The authorities predominate in number to the effect that title to an interest in the streets and alleys of a municipality cannot be acquired by adverse possession, but it is unnecessary to explore the intricacies of that question because the statute textually requires ten years' actual, visible, exclusive, and hostile possession. If any one or more of these elements is absent, no rights are acquired. Jenkins v. Maxwell Land Grant Co., 15 N. M. 281, 107 P. 739; Montoya v. Catron, 22 N. M. 570, 166 P. 909; First Nat. Bank v. Tome, 23 N. M. 255, 167 P. 733. For the reasons already reviewed, the company had no right under the act of 1909. It acquired the franchise in 1911; recorded a written assignment of it and held it until it expired in 1919; and use and occupancy of the streets during that time must be held to have been exercised under the franchise. The possession since then and until shortly before the institution of this action was neither adverse nor hostile. To the contrary, it was permissive in nature (see cases subsequently cited) and that fails to meet an essential requirement of the statute.

Turning now to the argument that the city is estopped to ask a court of equity for relief by injunction in the nature of ouster, the expenditures made by the company for replacements, additions, and improvements prior to 1919 do not suffice to sustain the contention because, as previously stated, it then owned a franchise which the city never challenged at any time, except in the informal and ineffec-

tive statement of the mayor and city attorney. And the expenditures made after the franchise expired, the telephone and other service furnished without cost and the payment of ad valorem taxes and license fees cannot foreclose the city to question the right of the company to a perpetual right of use and occupancy because the company did not rely and act in connection therewith upon anything which the city did or failed to do. Instead, it had full knowledge of the situation and relied exclusively upon its own judgment. Nothing which the city did or omitted to do induced it to act. Estoppel is never created except by statement or conduct which the person asserting it relied and acted upon to change his position for the worse. While for these reasons the acceptance of telephone and other service and the payment of license fees do not vest the company with a perpetual right in the streets and alleys, the city cannot accept and receive them and at the same time oust the company. They constitute an implied agreement of indefinite duration, terminable within a reasonable time after their acceptance has ceased. Denver v. Denver Union Water Co., 246 U. S. 178, 38 S. Ct. 278, 62 L. Ed. 649; Hill v. Elizabeth City (C. C. A.) 298 F. 67; Elizabeth City Water & Power Co. v. Elizabeth City, 188 N. C. 278, 124 S. E. 611; State v. Des Moines City Ry. Co., 159 Iowa, 259, 140 N. W. 437. The commencement of this suit, duly authorized by a resolution of the governing body of the city, may properly be construed as an election to terminate that agreement. Public convenience and private right require that reasonable notice be accorded before ejectment is effective. If the parties are unable to agree on a franchise prior to July 1, 1936, then within ten days thereafter the mayor and city attorney may so certify in writing to the court below, and thereupon and thereafter the city will be entitled to a writ of assistance to remove and exclude the company's poles, wires, and other equipment from the streets, alleys and other public places of the city.

Other questions are argued. We think they are insubstantial.

The decree is reversed, and the cause remanded, with instructions to proceed further in accordance with the views expressed in this opinion.

Reversed and remanded.

