WILSON v. PLUTUS MINING CO. et al.

(Circuit Court of Appeals, Eighth Circuit. November 15, 1909.)

No. 3,066.

**1. VENDOR AND PURCHASER (§ 254*)—"VENDOR'S LIEN."**

A conveyance of real estate for which the consideration is not paid raises a claim in equity upon the property conveyed, commonly called a "vendor's lien," which courts enforce against the grantee and those claiming under him with notice, on the ground that one who gets the estate of another ought not to be permitted to keep it without paying the agreed consideration for it.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 641–651; Dec. Dig. § 254.*

For other definitions, see Words and Phrases, vol. 8, pp. 7288–7290, 7827.]

**2. COURTS (§ 262*)—VENDOR'S LIEN—FEDERAL COURTS ENFORCE UNLESS CONTRARY TO JURISPRUDENCE OF STATE.**

The federal courts enforce a vendor's or grantor's lien in pursuance of the general rule in equity, when it is not in contravention of the jurisprudence of the state in which the suit is brought.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 797, 798; Dec. Dig. § 262.*]

**3. EQUITY (§ 231*)—PLEADING—ABSENCE FROM BILL OF PRAYER FOR SPECIAL RELIEF NOT FATAL.**

The absence from a bill in equity of a prayer for the special relief, to which the complainant supposes himself entitled, will not sustain a dismissal upon a demurrer which does not specify that defect, where the bill states a good cause of action and contains a prayer for general relief.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 231.*]

**4. EQUITY (§ 87*)—LACHES—APPLICATION IN ANALOGY TO STATUTES OF LIMITATION—RULES FOR.**

Courts of equity are not bound by, but act in analogy to, the statutes of limitation relating to actions at law of like character.

When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the bill or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches within that time.

When a suit is brought after the statutory time, the burden is on the complainant to show in his bill and by his proof that it would be inequitable to apply it to his case.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 242–244; Dec. Dig. § 87.*]

**5. EQUITY (§ 87*)—LACHES—FACTS PLEADED SUFFICIENT TO SUSTAIN SUIT AFTER ANALOGOUS LIMITATION EXPIRED.**

The bill of the complainant disclosed these facts: In May, 1898, complainant conveyed his interest in mining claims to one of the defendants for a recited consideration of $125,000, no part of which has been paid to him. The analogous limitation at law was six years, and this suit was brought in 1908. He was committed to the state mental hospital in August, 1898, was released in November, 1898, and he was told that the condition of his release was that he should leave and stay out of the state. He left, and, with the exception of about 83 days, he stayed out of the state until June 17, 1907, when he returned, was arrested, and on July 23, 1907, was committed to the state mental hospital again as an insane person. There were no innocent purchasers among the defendants.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

*Held,* it would be inequitable to apply to the complainant's case the analogous limitation of an action at law to six years.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 87.*]

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Utah.

Bill by William J. Wilson, by Murray M. Kellogg, his next friend, against the Plutus Mining Company and others. From a decree sustaining the demurrer and dismissing the bill, complainant appeals. Reversed and remanded.

Before SANBORN and VAN DEVANTER, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

Murray M. Kellogg (Alfred L. Booth, on the brief), for appellant.

C. S. Varian (D. H. Thomas, A. L. Hoppaugh, and Charles C. Dey, on the brief), for appellees.

SANBORN, Circuit Judge. This is an appeal from a decree which sustained a demurrer to and a dismissal of the bill in equity exhibited by William J. Wilson, an insane man, by his next friend, for an adjudication of his claims upon three lode mining claims. The bill is meager, and suggests some inquiries that it does not answer; but it fairly sets forth these alleged facts: The complainant owned and was in the possession of an undivided half of three lode mining claims in the state of Utah, which had not been patented, and one Martin was the owner of the other undivided half thereof. Wilson gave Martin a power of attorney to convey the former's interest in these claims, and Martin agreed that he would not dispose of that interest for less than $10,000, and that he would deposit $10,000, in a certain bank to Wilson's credit as soon as he should make a sale. On May 4, 1898, Martin conveyed the three claims to the Juab Mining Company, a corporation, one of the defendants, for a recited consideration of $250,000, and the Juab Mining Company attempted to issue certain shares of its stock to the complainant in payment of his share of the purchase price; but Wilson never accepted these shares, and no part of the purchase price was ever paid to him. In 1907 the Juab Mining Company conveyed these mining claims to the Plutus Mining Company, a corporation, whose president knew all the facts averred in this bill. In August, 1898, the complainant was adjudged insane and committed to the state mental hospital in the state of Utah. On November 16, 1898, he was released from this hospital and told by the authorities thereat that the condition of his release was that he should leave and should never return to the state of Utah. He immediately went out of the state, and remained beyond its borders, with the exception of two months in 1899 and 33 days in 1900, until June 20, 1907, when he returned, and was at once arrested, and on July 23, 1907, was committed to the state mental hospital again as an insane person.

Because one who gets the estate of another ought not to be allowed to keep it without paying the consideration of its sale to him, an equitable claim in favor of the grantor for the unpaid purchase price, or a

vendor's lien, springs up and attaches to real estate conveyed without a payment of the consideration, which courts of equity have very uniformly enforced against the grantee and those claiming under him with notice that the purchase price is not paid. This is a general rule of equity jurisprudence, which prevails in England and in this country, unless abolished by statute or by an established rule of decision to the contrary by the courts of the local jurisdiction. The courts of the United States enforce such grantor's and vendor's liens when they are not in contravention of the jurisprudence of the state in which the suit is brought. Slide & Spur Gold Mines v. Seymour, 153 U. S. 509, 516, 14 Sup. Ct. 842, 38 L. Ed. 802; Fisher v. Shropshire, 147 U. S. 133, 139, 140, 13 Sup. Ct. 201, 37 L. Ed. 109. No statute or line of decisions in the state of Utah has been called to our attention which is in conflict with the general rule of equity jurisprudence upon this subject, so that the enforcement of such liens is not out of harmony with the jurisprudence of that state.

A conveyance and a failure to pay the consideration are presumptive proof of a vendor's lien. "Generally speaking, the lien of the vendor exists," says Mr. Justice Story in his work on Equity Jurisprudence, at section 1224, "and the burden of proof is on the purchaser to establish that in the particular case it has been intentionally displaced or waived by the consent of the parties. If under all the circumstances it remains in doubt, then the lien attaches." Seymour v. Slide & Spur Gold Mines (C. C.) 42 Fed. 633, 637; Berger v. Berger, 104 Wis. 282, 80 N. W. 585, 76 Am. St. Rep. 877. It is possible that the defendants may be able to show that complainant's lien was released, or that for some reason, not apparent on the face of the bill, it never attached. But the facts averred by the complainant and admitted by the demurrer that Wilson, by his attorney in fact, Martin, sold and conveyed to the Juab Mining Company his half interest in the three mining claims for $125,000, and that no part of this purchase price has ever been paid to him, are clearly sufficient, in the absence of denial and of countervailing evidence, to establish his vendor's lien upon the mining claims for the $125,000 and interest.

Counsel for the defendants argue that the facts stated in the bill fail to show any lien upon this property as against them, because it contains no averment that they knew, when they respectively acquired the property, that Wilson had or claimed such a lien, and because it contains an allegation that the Juab Mining Company secured a patent to these claims in 1903. But the complainant avers in his bill that the conveyance to the Juab Company was made by him through his attorney in fact, that the Juab Company attempted to issue shares of its stock to him in payment for it, and that its president and the president of the Plutus Company knew all the facts set forth in the bill. The knowledge of the presidents was the knowledge of their respective companies, for these presidents were conducting the negotiations for the sale of the mining claims by the Juab Company to the Plutus Company. The facts that the Juab Company took a deed from the complainant and attempted to pay him for his interest with its stock are ample to show that it knew who the vendor of this interest was, that he had not been paid for it, and hence that he had a vendor's lien

upon it for his purchase price. The Plutus Company knew all these facts before it took this deed, because its president knew them. And as the vendor's lien attached before the patent issued, and the Juab Company procured the latter with knowledge of the lien, and by means of the very deed to secure the payment of the consideration of which the lien attached, the title under the patent inured to the benefit of Wilson, as well as to that of the defendants, and the latter took it subject to his lien.

Counsel suggest that the prayer of the bill fails to ask the special relief to which the complainant supposes himself entitled as required by equity rule 21. But the bill contains a prayer for a discovery, "to the end that your orator may have his rights determined and adjudicated according to the facts hereinbefore set forth," and for general relief. In view of the fact that no objection to this prayer was made in the demurrer, and that the court may lawfully grant other relief under the general prayer, although a complainant is not entitled to the specific relief he asks. (Watts v. Waddle, 6 Pet. 389, 402, 8 L. Ed. 437; Sage v. Central Railroad Company, 99 U. S. 334, 25 L. Ed. 394; London & San Francisco Bank v. Dexter, Horton & Co., 126 Fed. 593, 61 C. C. A. 515, 528; Moore v. Mitchell, 17 Fed. Cases, 692, 694 [Case No. 9,770]), there is no merit in this objection.

Another position taken by counsel for the defendants is that the complainant has an adequate remedy at law by an action for damages against his agent Martin. But such an action may be barred by the statute of limitations (Comp. Laws Utah 1907, § 2875), and it does not appear that, if maintainable, it would afford a remedy as prompt, adequate, and effective as this suit in equity, because Martin may not be liable for more than the $10,000 specified in his special agreement with the complainant, while the purchase price of the complainant's half of the property appears to have been many times that amount.

A possible objection to the maintenance of this suit, which was not mentioned in the demurrer or in the brief, has occurred to us, and that is that, while the cause of action on which the bill is based arose in May, 1898, this suit was not commenced until June, 1908. But the general rule is that defendants, by silent acquiescence in the maintenance of a suit against them and by the litigation of its merits, may waive the fact that it was not brought until the limitation prescribed for its commencement had been passed, and courts of equity are not bound by, but act, or refuse to act, in analogy to, the statute of limitations relating to actions at law of like character. Under ordinary circumstances a suit in equity will not be stayed before, and will be stayed after, the time fixed by the analogous limitation at law; but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the bill or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches, and, when such a suit is

brought after the statutory time has elapsed, the burden is on the complainant to show, by suitable averments in his bill, that it would be inequitable to apply it to his case.   Kelley v. Boettcher, 85 Fed. 55, 62, 29 C. C. A. 14, 21; Ide v. Trorlicht, Duncker & Renard Carpet Co., 115 Fed. 137, 148, 53 C. C. A. 341, 352; Boynton v. Haggart, 120 Fed. 819, 830, 57 C. C. A. 301, 312; Williams v. Neely, 134 Fed. 1, 13, 67 C. C. A. 171, 183, 69 L. R. A. 232; Brun v. Mann, 151 Fed. 145, 154, 80 C. C. A. 513, 522, 12 L. R. A. (N. S.) 154.   The limitation prescribed by the statute of Utah for an analogous action at law was six years (Comp. Laws Utah 1907, § 2875); but the facts alleged in the bill, that the defendants have the property of the complainant, for which he has received no part of the consideration of his conveyance, that there is no innocent purchaser among them, that the complainant is an insane man, that he was committed to the state mental hospital in August, 1898, about three months after his cause of action accrued, that when he was released in November of that year he was told by the authorities at the hospital that his release was on condition that he should leave the state of Utah and never return to it, that he left the state to avoid confinement, and remained beyond its borders, except for about 83 days, until June 17, 1907, that he was arrested the very day in 1907 that he returned to the state, and was committed to the hospital again on July 23, 1907, present a case so extraordinary that, in the absence of denial or evidence to the contrary, it would be inequitable to apply the analogous limitation at law to this suit (Stevens v. Grand Central Min. Co., 133 Fed. 28, 32, 67 C. C. A. 284, 288).

For these reasons, the decree below must be reversed, and the case must be remanded to the Circuit Court, with directions to permit the defendants to answer and to take further proceedings in accord with the views expressed in this opinion; and it is so ordered.