BURGESS v. HILLMAN et al.

(Circuit Court of Appeals, Eighth Circuit. December 3, 1912.)

No. 3,728.

1. PUBLIC LANDS (§ 54*)—SCHOOL LANDS—FORFEITURE—ACTION TO VACATE—
LACHES.

Act Kan. Jan. 25, 1907 (Laws 1907, c. 373), provides that no action shall
be brought to set aside a forfeiture of school lands, unless commenced
within six months after the forfeiture was declared, or, when such time
has already elapsed, within six months after the act took effect. A con-
tract to purchase school land from the state, assigned to complainant,
was forfeited for nonpayment on August 18, 1900, and the land was
again sold to defendants' grantor on July 9, 1901. Complainant, though
learning of the forfeiture in October, 1903, did not commence an action
to set it aside until January 20, 1905, when he brought suit for such
relief, but did nothing to bring it to trial until May 20, 1907, when the
suit was dismissed on complainant's own motion without prejudice, after
which, on July 23, 1907, he instituted another suit in the federal court
for similar relief, during which time defendants had been in possession
and had erected valuable improvements on the land. *Held*, that com-
plainant's right to relief was barred by laches, though the suit was com-
menced within the statute of limitations.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 152–169;
Dec. Dig. § 54.*]

2. EQUITY (§ 87*)—LACHES—LIMITATIONS.

The rule that courts of equity are not bound by, but usually act or
refuse to act in analogy to, the statute of limitations relating to actions
at law of like character, means that under ordinary circumstances a
suit in equity will not be stayed for laches before, and will be stayed
after, the time fixed by the analogous statute of limitations at law; but
if unusual conditions or extraordinary circumstances make it inequitable
to allow the prosecution of a suit after a briefer, or to forbid its main-
tenance after a longer, period than that fixed by the statute, the chan-
cellor will not be bound by the statute, but will determine the case in
accordance with the equities which condition it.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 242–244; Dec.
Dig. § 87.*]

Appeal from the Circuit Court of the United States for the District
of Kansas.

Suit by T. J. Burgess against William G. Hillman and others. De-
cree for defendants, and complainant appeals. Affirmed.

Lee Monroe, of Topeka, Kan. (C. M. Monroe, of Topeka, Kan., on
the brief), for appellant.

John E. Hessin, of Manhattan, Kan., for appellees.

Before SANBORN and CARLAND, Circuit Judges, and W. H.
MUNGER, District Judge.

CARLAND, Circuit Judge. Appellant commenced this action in
equity for the purpose of avoiding the forfeiture of certain lands by
the state of Kansas, to have appellees declared to hold the land in trust
for appellant, that appellees be decreed to convey the land to him
upon payment of any sum due them by reason of lasting and valuable
improvements placed on said premises, and of taxes paid thereon by

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

them, or either of them, and of any and all legal liens or claims which they, or either of them, had against said premises, and that an account be taken for the value of the rents, issues, and profits during the time the land had been in the possession of the appellees.

The bill alleged that on the 9th day of March, 1885, the state of Kansas sold to one Asa R. Adair the lands described therein; that on the 25th day of August, 1888, Adair sold and assigned the certificates of purchase to appellant; that the price paid for the land by Adair was $3 per acre, of which purchase price the sum of 30 cents per acre was paid in cash at the time of the purchase, and the remainder, $2.70 per acre, was to be paid in 20 years, with annual installments of interest payable on the 9th day of March in each year; that the installments of interest were paid either by Adair or appellant down to and including the installment due March 9, 1899; that the installment of interest due March 9, 1900, was not paid by appellant, and on August 18, 1900, the land was forfeited to the state of Kansas under proceedings provided by the laws of that state in relation to the forfeiture of school lands in default of payment of principal or interest by the purchaser thereof. The proceedings which resulted in the forfeiture of the lands are set forth in the bill, and it is claimed that they were so irregular as to be voidable by appellant.

The lands were again advertised for sale at public auction, and one Phares purchased the same on July 9, 1901. Subsequently thereto Phares conveyed the land to appellees, who went into the possession of the same and placed a dwelling house and other lasting and valuable improvements thereon. The bill further alleges that appellant did not learn of the forfeiture of the lands until October 1, 1903; that on January 20, 1905, he commenced an action in a state court of Kansas for the purpose of avoiding the forfeiture, and for relief similar to that sought in the present action. May 20, 1907, on his own motion, appellant dismissed the action in the state court without prejudice, and commenced this action on July 23, 1907. The trial court dismissed the bill on demurrer for want of equity.

[1] We find it unnecessary to discuss in detail the question of the validity of the proceedings which resulted in the forfeiture of the lands to the state of Kansas, for we are of the opinion that, conceding the forfeiture to have been voidable at the suit of appellant, had he been diligent in the assertion of his rights, a court of equity will not now, upon the facts alleged in the bill, permit him to attack it. The state of Kansas passed a statute of limitations in relation to actions like the one at bar, which became effective January 25, 1907, the fourth section of which reads as follows:

"Sec. 4. No action shall be brought by any purchaser of school land, or by the assignee of such purchaser, in any court of this state, to recover any tract of school land, or to enforce the purchaser's right to or interest in the same, when a forfeiture thereof has been declared, unless such action be commenced within six months after such forfeiture was declared, or, when such time has already elapsed, within six months after this act takes effect."

It will thus be seen that this action was commenced only a day or two before the statute of limitations had run. Nearly five years

elapsed after the forfeiture of the land before the suit was commenced in the state court, and, as appellant voluntarily dismissed that suit after it had been pending for two years without trial, it is of very little value as evidence upon the question of diligence, and it was nearly seven years after the land was forfeited that the present suit was commenced. The bill admits that appellant had actual notice of the forfeiture October 1, 1903, and still he waited until January 20, 1905, before he commenced the action in the state court. The proceedings which resulted in the forfeiture of the lands were matters of public record, and any one sufficiently interested in the lands could have obtained notice of the state of the title at any time. It is true that Burgess was a nonresident of the state, but according to the bill he had an agent in charge of the collection of rents from the lands who did live in Kansas. The statute of limitations above quoted shows very emphatically that it is the public policy of the state of Kansas that actions like the one at bar shall be commenced promptly. If the same statute had been in force when the forfeiture of the lands occurred, it would have run many times before the date of the commencement of the present action. In line with this statute, we hold that this is one of the cases where a court of equity ought to declare appellant guilty of laches, although the suit was commenced within the statute of limitations.

[2] The rule in such cases has been ably stated by Judge Sanborn in delivering the opinions of this court in Kelley v. Boettcher, 85 Fed. 55, 29 C. C. A. 14, Boynton v. Haggart, 120 Fed. 821, 57 C. C. A. 301, Wyman v. Bowman, 127 Fed. 257, 62 C. C. A. 189, and Wilson v. Plutus Mining Co., 174 Fed. 317, 98 C. C. A. 189. In Kelley v. Boettcher, it was said:

"In the application of the doctrine of laches, the settled rule is that courts of equity are not bound by, but that they usually act or refuse to act in analogy to, the statute of limitations relating to actions at law of like character. Rugan v. Sabin, 10 U. S. App. 519, 534, 3 C. C. A. 578, 583, and 53 Fed. 415, 420; Billings v. Smelting Co., 10 U. S. App. 1, 62, 2 C. C. A. 252, 262, 263, and 51 Fed. 338, 349; Bogan v. Mortgage Co., 27 U. S. App. 346, 357, 11 C. C. A. 128, 135, and 63 Fed. 192, 199; Kinne v. Webb, 12 U. S. App. 137, 148, 4 C. C. A. 170, 177, and 54 Fed. 34, 40; Scheftel v. Hays, 19 U. S. App. 220, 226, 7 C. C. A. 308, 312, and 58 Fed. 457, 460; Wagner v. Baird, 7 How. 234, 258, 12 L. Ed. 681; Godden v. Kimmell, 99 U. S. 201, 210, 25 L. Ed. 431; Wood v. Carpenter, 101 U. S. 135, 139, 25 L. Ed. 807. The meaning of this rule is that, under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed by the analogous statute of limitations at law; but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it."

The above rule was restated and enforced in the other cases cited. The case of Burgess v. Hixon, 75 Kan. 201, 88 Pac. 1076, was a case wherein this same appellant was seeking to eject Hixon from certain school lands which had been purchased from the state by one Walton in the same manner as the lands in controversy herein had been purchased by Adair. Burgess was the assignee of Walton. The

language of the court in the case cited is very appropriate as characterizing the position of Burgess in the present case, and we repeat it here, as follows:

"Of course Walton knew from the instant of his first default that his rights were subject to forfeiture. He knew that upon his failure to pay it was the imperative duty of the county clerk to put into operation, and of the sheriff to carry out, forfeiture proceedings. He was bound to anticipate and to expect that the law would be followed, and the record which was in fact made was ample to give him information that the state had undertaken to terminate his rights, and that the officials having authority in the matter construed what was done to amount to a restoration of the land to the public domain."

It sufficiently appears from the record that the lands in question were of a speculative value, and appellant does not seem to have had sufficient interest in the same for three years to pay any of the installments of interest, or to ascertain from the many sources of information open to him the condition of the title. After having had actual notice of the forfeiture, he delayed more than a year before commencing his action in the state court, and then, after that action had been pending for two years, he dismissed it and commenced the present action. In the meantime appellees had gone into possession of the land and made lasting and valuable improvements. It is true appellant in his bill offers to allow appellees to receive credit by deducting the value of the improvements from the rents and profits claimed by appellant, but we do not think appellees in equity owe appellant any rents and profits.

Therefore the decree of the Circuit Court must be affirmed; and it is so ordered.