CARPENTER v. M. J. & M. & M., CONSOLIDATED, et al.†

(Circuit Court of Appeals, Ninth Circuit. February 16, 1914.)

No. 2277.

1. JUDGMENT (§ 522*)—CONCLUSIVENESS—COLLATERAL ATTACK.

The purchaser of a section of school land from the state of California received a certificate of purchase which he assigned to one G., but the assignment was not filed with the Register of the State Land Office as required by law. Three years later, no interest having been paid on the deferred installment of purchase money, a foreclosure suit was brought by the state, and the certificate was adjudged null and void and canceled. The original purchaser was the only party defendant in the action, but Pol. Code Cal. § 3552, provides that the judgment in such case shall bind an assignee, unless notice of his assignment has been filed with the register before commencement of the action. Certified copies of the judgment were filed with the register and county recorder, and the land was sold to another, to whom a second certificate was issued. Six years after the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

†Rehearing denied May 25, 1914.

judgment G., who had made no payments on his certificate, assigned interests therein to two others, who, under an agreement with him, filed a motion to set aside the judgment as void for want of jurisdiction. An order denying the motion was affirmed by the Supreme Court of the state. Subsequent litigation between G. and his assignees and the second purchaser resulted in favor of the latter; the Supreme Court holding that the question of the validity of the judgment canceling the first certificate was res judicata and the judgment conclusive against collateral attack. A patent was then issued to the second purchaser. G. having died, complainant, as assignee of certain of his heirs, commenced the present suit in equity against the patentee and her grantees, praying for a decree that defendants held the title to an undivided part of the land in trust for him, and alleging the invalidity of the judgment for cancellation. *Held*: (1) That the state judgment of foreclosure and cancellation effectively barred a suit by any one claiming under the defendant therein, so long as it remained in force; and (2) that the present suit, which did not ask its vacation, was not a direct but a collateral attack upon such judgment and could not be maintained.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 965; Dec. Dig. § 522.*

Conclusiveness of judgments as between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank of Memphis v. City of Memphis, 49 C. C. A. 468; Converse v. Stewart, 118 C. C. A. 215.]

2. TRUSTS (§ 365*)—LACHES—DELAY IN BRINGING SUIT.

The suit not having been brought until 19 years after the judgment attacked was rendered, and no valid reason for the delay being shown, complainant was barred by laches from the right to any relief in equity.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 568–573; Dec. Dig. § 365.*]

Appeal from the District Court of the United States for the Northern Division of the Southern District of California; Wm. C. Van Fleet, Judge.

Suit in equity by Judd E. Carpenter against M. J. & M. & M., Consolidated, Ethel D. Company, Maricopa 36 Oil Company, Wellman Oil Company, Cliff Oil Company, M. & T. Oil Company, Associated Transportation Company, Standard Oil Company, Associated Oil Company, all corporations, and Emily E. Graham, as executrix of the estate of F. M. Graham, deceased, R. E. Graham, George E. Whitaker, William F. Phillips, Mary A. Bonynge, W. A. Bonynge, W. C. Price, John Doe, Richard Roe, and others. Decree for defendants, and complainant appeals. Affirmed.

Suit in equity by the plaintiff that the defendants be decreed to hold the title to an undivided one-sixth of certain described lands in Kern county, Cal., in trust for the use and benefit of the plaintiff; that defendants be directed to execute a deed of said land to plaintiff; that defendants account to the plaintiff for all the petroleum and natural gas extracted and removed by the defendants from said premises; and that, pending litigation, a receiver be appointed to take and receive all the rents, issues, and profits of said lands, and for an injunction, pending litigation, restraining the defendants from taking or extracting oil from said land, or from selling any oil now on said land.

On August 1, 1888, one S. Davis, a citizen and resident of the city of Sacramento, Cal., filed in the office of the Surveyor General of that state an application to purchase from the state certain school lands belonging to the state, described as section 36, township 12 north, range 24 west, San Bernar-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dino base and meridian, containing 640 acres, situate in the county of Kern, in said state of California. The price of the land was $1.25 per acre, making a total of $800. The application to purchase was approved by the Surveyor General of the state on February 1, 1889, and a certificate of said approval was on that date issued and delivered to Davis. On February 15, 1889, Davis paid to the treasurer of Kern county, on account of said purchase price, the sum of 25 cents per acre, amounting to $160, together with interest in advance at the rate of 7 per cent. per annum on the unpaid balance of $640 from the date of the approval of the purchase to the 1st day of the following January. The interest amounted to $41.07, making a total payment of $201.07, leaving unpaid the principal sum of $640. On March 20, 1889, the Register of the Land Office of the state of California issued to said Davis a certificate of purchase for said section of land. On April 1, 1890, Davis sold and assigned all of his right, title and interest in and to said certificate of purchase, and all of his right, title, and interest in and to the land described in said certificate, to one Charles H. Gilman. No notice of this assignment appears to have been filed with the county recorder of Kern county or the register of the Land Office, as required by law.

The annual installment of interest on the Davis certificate of purchase, due and payable in advance on the 1st day of January in each year, being unpaid and delinquent for the years 1890, 1891, and 1892, the district attorney of the county of Kern, state of California, on August 25, 1892, brought suit in the superior court of that county to foreclose the interest of said Davis in and to the certificate of purchase issued to him by the Register of said Land Office on March 20, 1889, and in and to the land described therein, on account of the delinquency and nonpayment of the balance of the purchase price of said land, and the unpaid interest thereon, amounting in the aggregate to $774.40. On the day the complaint was filed, a summons was issued which was placed in the hands of the sheriff of Kern county on August 27, 1892, and the latter, on August 30, 1892, made return that "after due search and diligent inquiry" he had been "unable to find the within named defendant, S. Davis, in Kern county." On September 6, 1892, an affidavit for an order of publication was filed, and an order for the service of summons by publication was made and entered therein by the court. On December 19, 1892, an affidavit of publication of the summons was filed, showing that the summons had been published "in the Kern county Echo," a newspaper published in said Kern county, for ten consecutive weeks, as required by law. On December 27, 1892, the default of the defendant Davis was entered by the court, and thereupon a decree was entered in said action wherein the court found that the defendant had been regularly served with process as required by law and had failed to appear and answer the complaint therein, that the legal time for answering had expired, and the default of the defendant had been duly entered according to law; and thereupon the court adjudged and decreed that all the interest of the said defendant Davis in and to the certificate of purchase theretofore issued to him by the state of California, and all his right, title, and interest in and to the land therein described, be foreclosed and forever canceled, and thenceforth rendered null, void, and of no force, validity, or effect whatsoever, and that all persons claiming under said defendant subsequent to the execution of said certificate of purchase, either as purchaser, incumbrancer, or otherwise, having liens upon said land, be forever barred and foreclosed of all right, claim, or equity of redemption in and to said certificate of purchase of said land, and every part thereof.

On January 4, 1893, a certified copy of this judgment was filed in the office of the Register of the State Land Office, and on January 16, 1893, a certified copy of said judgment was filed in the office of the county recorder of Kern county, Cal.

On January 22, 1899, Mary A. Bonynge, one of the appellees in this case, made application to the State Land Office to purchase from the state the land described in the Davis certificate and in the foreclosure judgment. This application was approved by the Surveyor General of the state, and on January 23, 1900, a certificate of purchase for said land was issued to her. On July 25, 1900, Thomas L. Moran, who had made application to purchase the south

half of said section 36, commenced an action in the superior court of Kern county against Mary A. Bonynge, claiming the right to have the respective rights of the parties to purchase said land determined by the court. On December 7, 1900, Charles H. Gilman (to whom Davis on April 1, 1890, had assigned the certificate of purchase to the land in controversy) assigned to one Fred W. Lake an undivided one-half interest and to one H. H. Snow an undivided one-fourth interest in and to the Davis certificate of purchase. Lake on October 1, 1900, had acquired knowledge of the judgment of foreclosure entered in the superior court of Kern county, with respect to the land described in the Davis certificate, and this knowledge he had communicated to Davis and Gilman at that time. On December 14, 1900, the latter appeared in the superior court of Kern county and moved the court to set aside and vacate and annul the judgment entered on December 27, 1892, and quash the service of summons in said case, on the ground that the judgment was void and was entered without authority of law, for the reason that the court never acquired jurisdiction over the person of the defendant and had acquired no jurisdiction to render any judgment against him in the case; that no service of summons issued in said case, either actual or constructive, was ever made upon said defendant; that the affidavit and order of publication of summons made and filed therein did not comply with the laws of the state; that all the proceedings had and done against the defendant were null and void and of no legal force or effect whatever. On December 31, 1900, the motion was granted, and the court made its order purporting to annul, vacate, and set aside its judgment entered on December 27, 1892. On the day this order was made by the court in the case of People v. Davis (143 Cal. 673, 77 Pac. 651), the court made an order in the case of Moran v. Bonynge (157 Cal. 295, 107 Pac. 312), granting Gilman, Snow, and Lake leave to file a complaint in intervention in that case, and such complaint in intervention was thereupon filed. On October 21, 1901, the district attorney of Kern county gave notice that he would move the court to set aside the order made in People v. Davis on December 31, 1900, purporting to vacate and annul the judgment of December 27, 1892, which motion was granted on December 11, 1901. From this order an appeal was taken by Lake, as the successor in interest of Davis, to the Supreme Court of the state of California, where the order of the superior court was affirmed, the Supreme Court holding that a judgment which was not void upon its face could not be vacated upon motion after the lapse of one year, as provided in section 473 of the Code of Civil Procedure of the state of California; that the question whether a judgment was or was not void upon its face was to be determined from an inspection of the judgment roll under the statute in force at the time of the entry of the judgment; that by such inspection the court found that the judgment was not void upon its face, since under the statute, as it then stood, the affidavit and order of publication of the summons were not part of the judgment roll; and that their sufficiency would be conclusively presumed in favor of the validity of the judgment. People v. Davis, 143 Cal. 673, 77 Pac. 651.

On December 28, 1907, Gilman, Lake, and Snow filed an amended complaint in intervention in Moran v. Bonynge, to which the defendants demurred, and the demurrers were sustained without leave to further amend. On May 19, 1908, a judgment was entered in said action awarding the right to purchase the land in controversy to Mary A. Bonynge. From this judgment Gilman, Lake, and Snow appealed to the Supreme Court of the state of California, and that court affirmed the judgment of the lower court on February 7, 1910, holding that the complaint in intervention did not state facts sufficient to entitle the plaintiffs to a judgment in their favor. Moran v. Bonynge, 157 Cal. 295, 107 Pac. 312.

On January 25, 1909, the state of California issued a patent for said section 36 to Mary A. Bonynge. Under this patent the defendants derive their title to the land in controversy. On March 1, 1909, Lake and Snow commenced an action in the superior court of Kern county against Mary A. Bonynge and John Doe to obtain a judgment declaring that the defendants held the naked legal title to the lands conveyed by the state to Mary A. Bonynge, in trust for the plaintiffs. In the complaint it was alleged that on

December 7, 1900, Gilman sold and transferred to the plaintiff Snow an undivided one-fourth interest in and to the Davis certificate, and had sold and transferred to the plaintiff Lake, on the same date, an undivided one-half interest in and to said certificate. The plaintiffs asked, in addition to a decree in their favor, that the court should make such decree to protect the heirs, devisees, and collateral kindred of Charles H. Gilman (who it was alleged had died intestate in San Francisco, Cal., on January 17, 1909), as might be consistent with equity. To this complaint Mary A. Bonynge and W. A. Bonynge filed their answer, and on June 1, 1909, judgment was entered in said action in favor of the defendants. The plaintiffs Lake and Snow appealed to the Supreme Court of the state from the last-mentioned judgment, and that court affirmed the judgment of the superior court, holding, in an elaborate opinion, that the judgment rendered by the Supreme Court on the appeal in People v. Davis, 143 Cal. 673, 77 Pac. 651, was res judicata on the subject of the validity of the original judgment and conclusive against collateral attack. Lake v. Bonynge, 161 Cal. 120, 118 Pac. 535. In the brief for appellant we are informed that a writ of error has been granted in this case by the Supreme Court of the United States; and that the case is now pending in the latter court.

Charles H. Gilman died intestate on January 17, 1909, in the city and county of San Francisco, leaving him surviving as his heirs at law six children, to wit, Eunice May Gilman, Ruby Hagerdon, Mabel Corey, Pearl Alisky, James Monroe Gilman, and Cordelia Thompson. At the time of his death said Charles H. Gilman claimed to be the owner and holder of an undivided one-fourth interest in and to the certificate of purchase issued to Davis by the state of California. Thereafter four of said children, to wit, James Monroe Gilman, Pearl Alisky, Eunice May Gilman, and Ruby Hagerdon, made, executed, and delivered a deed of conveyance of all their right, title, and interest in and to said certificate of purchase, and in and to the land covered thereby, as the heirs at law of said Charles H. Gilman, deceased, to one W. G. Deal, and by a decree of distribution entered in said estate an undivided one-sixth interest in and to the certificate of purchase, and in and to the land covered thereby, was distributed to said W. G. Deal. On August 9, 1910, said W. G. Deal sold, transferred, and assigned all his right, title, and interest in and to the certificate of purchase, and in and to the land covered thereby, to the plaintiff herein, Judd E. Carpenter.

The present suit in equity was commenced on December 30, 1911, by the plaintiff, Judd E. Carpenter, a citizen of the state of New York, claiming to hold a one-sixth interest in and to the certificate of purchase issued to Davis, and in and to the land covered thereby, against the defendants, all citizens of the state of California, as the assignees of Mary A. Bonynge. The bill of complaint sets up the various proceedings and conveyances hereinabove recited, whereby the plaintiff claimed to have become the owner and holder of an undivided one-sixth interest in and to the certificate of purchase issued to Davis. The prayer of the complaint is that it be decreed that the said defendants hold the title to an undivided one-sixth of said section 36 in trust for the use, benefit, and enjoyment of the plaintiff; that the defendants, and each of them, be directed and commanded to execute a deed of conveyance sufficient in form to convey an undivided one-sixth of said land to the plaintiff; that the defendants account to said plaintiff for all oil, petroleum, and natural gas extracted and removed by the defendants from said premises; and that an injunction be issued restraining the defendants, and each of them, pending this action, from taking or extracting oil from said land, or from selling any oil now on said land which was taken from said land.

The defendants demurred to the complaint on the ground that the plaintiff was without equity, and that his claim of right was barred by laches and by the statute of limitations of the state of California, and that this action is barred by the proceedings in the various suits in which the title to the land in controversy has been litigated and determined, as above recited.

A decree was entered in the court below sustaining the joint and several demurrers of the defendants to the bill of complaint, and dismissing said suit, from which decree the plaintiff has appealed to this court.

James F. Peck, of Oakland, Cal., and Charles C. Boynton and Walter Shelton, both of San Francisco, Cal. (Walter D. Cole, of Oakland, Cal., of counsel), for appellant.

Hunsaker & Britt, J. W. McKinley, and Frank Karr, all of Los Angeles, Cal., George E. Whitaker, of Bakersfield, Cal., and David S. Ewing and Frank H. Short, both of Fresno, Cal., for appellees Cliff Oil Co. and others.

Edmund Tauszky, of San Francisco, Cal., for appellees Associated Oil Co. and others.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). [1] The controversy in this case grows out of a certificate of purchase issued by the state of California on March 20, 1889, to one S. Davis, a resident of Sacramento, in the state of California, for a section of school land located in Kern county in that state. On April 1, 1890, Davis assigned this certificate to one Charles H. Gilman. Davis had paid 20 per cent. of the purchase price of the land, and interest in advance to the 1st day of January, 1890. On August 25, 1892, the annual installments of interest, which became due in advance on January 1st of 1890, 1891, and 1892, being unpaid and delinquent, the district attorney for Kern county commenced an action in the superior court of that county on behalf of the state to obtain a judgment foreclosing the interest of Davis in and to said certificate of purchase, and canceling and declaring the same null and void, and adjudging that all persons claiming under said Davis, subsequent to the execution of said certificate of purchase, either as purchasers, incumbrancers, or otherwise, be barred and foreclosed of all right, claim, or equity of redemption in and to such certificate of purchase.

It appears that at the time of the commencement of this action and the entry of the judgment therein on December 27, 1892, and subsequently, the certificate of purchase issued to Davis stood of record in his name; the notice of the assignment to Gilman not having been filed with the Register of the State Land Office. Gilman was therefore not made a party defendant in that action, and no judgment was entered against him by name. But it is provided in section 3552 of the Political Code of California that a judgment against a purchaser binds the assignee unless the notice of assignment has been filed with the Register before the commencement of the action. The judgment entered in the case followed the prayer of the complaint and adjudged and decreed that all the interest of said defendant in and to the certificate of purchase issued to Davis; and all the right, title, and interest in and to the land therein described, be foreclosed and forever canceled and thenceforth rendered null, void, and of no force, validity, or effect whatsoever, and that all persons claiming under the said defendant subsequent to the execution of said certificate of purchase, either as purchaser, incumbrancer, or otherwise, having liens upon said land, be forever barred and foreclosed of all right, claim, or equity of redemption in and to said certificate of purchase and every part thereof.

This judgment, as it stands of record and is continued in force, has foreclosed all the interest of Davis and his assignee Gilman in and to the certificate of purchase issued to Davis by the state, and has canceled the same and rendered it absolutely null and void, and has foreclosed the rights of all persons claiming under them or either of them, or under the certificate of purchase. It follows as a legal consequence that no rights can be predicated upon that certificate until that judgment is set aside and vacated. The plaintiff in the present case bases his right to have the defendants adjudged and decreed to hold the title to an undivided one-sixth of the land in controversy for his use and benefit upon the ground that to the extent of such interest he has become the successor in interest of Charles H. Gilman in and to the certificate of purchase issued to Davis and assigned to Gilman. He makes this claim notwithstanding a valid and subsisting judgment, rendered by a court of competent jurisdiction, has adjudged that the rights of all parties claiming under the purchaser or his assigns have been foreclosed, and the certificate declared null and void and of no effect; but the plaintiff claims that the present action was commenced to vacate and set aside the judgment standing in his way. We find nothing in the bill of complaint to support this claim. The bill contains no prayer that the judgment be set aside and vacated. The only relief prayed for, other than for an injunction and an accounting, is that it be adjudged and decreed that the defendants hold the title to the land in controversy for the plaintiff, and that they be required to convey the legal title to him. It is alleged in the bill of complaint that, in the action resulting in a judgment against Davis, the summons was not served upon the defendant Davis personally or otherwise; that Davis had no notice or knowledge of the proceeding in the superior court, or of said action, until about the 1st day of October, 1900; that said Gilman had no notice or knowledge of the proceedings in the superior court prior to the 1st day of October, 1900; that the court was without jurisdiction to render any judgment in said action against the defendant Davis; and that said judgment is null and void and of no effect whatever. But these allegations, without a prayer that the judgment be set aside and vacated, set up a collateral and not a direct attack upon the judgment. That the judgment is not open to collateral attack has been held by the Supreme Court of the state of California in the various litigations in which this controversy has reached the court. People v. Davis, 143 Cal. 673, 77 Pac. 651; Moran v. Bonynge, 157 Cal. 296, 107 Pac. 312; Lake v. Bonynge, 161 Cal. 120, 118 Pac. 535. In the latter case the Supreme Court refers to the judgment of foreclosure in the preceding case of People v. Davis, and, after quoting from the decision of the court on appeal in that case, says:

"The pivotal question upon which the validity of the order under review in the Davis appeal turned was whether the judgment roll showed that the trial court had acquired jurisdiction of the defendant. It was held that it had, and such decision is res judicata. Under this decision, the status of the judgment as a valid one was settled forever as against any collateral attack upon it by the parties to the appeal or their privies. Gilman had succeeded by the agreement of December 7, 1900, to the rights of Davis under his certificate of

purchase, and on the same day conveyed to Snow an undivided one-fourth and to Lake an undivided one-half interest in said certificate and the lands described in it. An agreement was entered into at the same time by Snow and Lake with Gilman which recited that 'as the Davis certificate had been foreclosed, and a decree annulling the same entered in a suit brought for that purpose, it is necessary, in order to maintain the claim of present title under said certificate of purchase, to take proceedings to set aside and annul the judgment and decree of foreclosure in said suit entered,' and that Snow and Lake agreed 'at their own expense and cost to take all necessary proceedings * * * to claim, assert, and maintain the title to said land as it originally accrued, * * * by reason of said certificate of purchase, and to recover and take the same as if no judgment of foreclosure had been entered,' and that the services to be performed by them towards that end was the true consideration for the conveyance from Gilman to them. Pursuant to that agreement, Lake moved the court to vacate the judgment, and took the appeal from the order annulling the previous order obtained by him vacating it. As successors of Davis through mesne conveyances, Lake, Gilman, and Snow, as their interests were injuriously affected by the judgment in People v. Davis, although not parties to the original action, had the right to make themselves parties to that action by moving to set aside the judgment, and on the denial of their motion had a right to appeal to have the proceedings of which they complained reviewed, not only for excess of jurisdiction, but for error. Elliott v. Superior Court, 144 Cal. 501, 77 Pac. 1109, 103 Am. St. Rep. 102. In making himself a party by moving thereunder and taking that appeal pursuant to the agreement made by him and Snow with Gilman, Lake was acting in behalf of Gilman, Snow, and himself in attacking the validity of the judgment in favor of the people of the state, plaintiff in that action, and under and through whom the respondent here, Mary A. Bonynge, acquired her title. While the parties of record on appeal were the people, Davis, and Lake, still the parties to the present action, in which the conclusiveness of the judgment on appeal is involved, are the same, or are parties who were in privity with them as parties to that appeal, and so are bound by the judgment therein. As said in Koehler v. Holt Mfg. Co., 146 Cal. 335, 337, 80 Pac. 73: 'The case comes clearly within the principle that a judgment operates as an estoppel to preclude the "parties and privies from contending to the contrary of that point or matter of fact which, having been once distinctly put in issue by them, has been, on such issue joined, solemnly found against them." ' "

It was further contended in that case that the action then before the court was in equity, and that the trial court, in the exercise of its equity jurisdiction, upon the evidence before it, should have gone behind the judgment and declared it void for failure to obtain jurisdiction to render it, and that is precisely the contention of the plaintiff in this case. As it was decided adversely to the plaintiff in that case, it must be held in this case that the whole question is res judicata and cannot be again litigated in the present case. If it be said that Gilman was not a party to that case, the answer is that Gilman, as well as Lake and Snow, was a successor of Davis, and, as Gilman's interest was injuriously affected by the judgment in People v. Davis, he had the right to make himself a party to that action by moving to set aside the judgment, and, on the denial of that motion, he had the right to appeal to have the proceedings reviewed, not only for excess of jurisdiction, but for error. This much is decided in Lake v. Bonynge; and, by an application of the same rule in the present case, we must hold that, if Gilman was not technically a party in Lake v. Bonynge, he was in privity with Lake and Snow, who were, and is barred by the judgment in that case and by the judgment in People v. Davis.

[2] But the bill of complaint discloses a still further objection to the plaintiff's case. It is not shown that either the plaintiff or his predecessors in interest have shown such diligence in protecting their rights as entitles the plaintiff at this late day to invoke the power of a court of equity. Gilman became the assignee of Davis in the certificate of purchase on the 1st day of April, 1890. To protect his rights as assignee, he should have notified the Register of the Land Office of the assignment before the commencement of the foreclosure suit. This he did not do. But it appears that between October 1 and December 31, 1900, he discovered that he had lost the certificate of purchase, and he thereupon applied to the Register of the Land Office for a duplicate. In his application Gilman appears to have notified the Register of the Land Office for the first time that the certificate of purchase had been assigned to him. When Davis assigned the original certificate to Gilman on April 1, 1890, the interest for the year 1890 on the balance due on the certificate was unpaid and delinquent. Neither Davis nor Gilman paid this interest, nor did Gilman, after the assignment of the certificate to him, pay the interest in advance on January 1st for the years 1891 and 1892, which was delinquent when the judgment of foreclosure was entered. Nor did he pay the interest in advance for the years 1893, 1894, 1895, 1896, 1897, 1898, 1899, or 1900. It was not until December, 1900, as appears from the bill of complaint, that Gilman tendered to the county treasurer of Kern county these delinquent payments covering a period of 11 years. This failure of Gilman to promptly notify the Register of the Land Office of the assignment to him of the certificate of purchase, and his further failure to pay the annual interest in advance on the balance due on the certificate for the period of 11 years, was negligence far beyond the period of any statute of limitations applicable to any feature of this case, if the action were at law.

It is provided in section 338 of the Code of Civil Procedure of California that an action for relief on the ground of fraud on the part of the state must be brought within three years after the discovery by the aggrieved party of the facts constituting the fraud; and in section 343 of the same Code it is provided that all actions for relief, not elsewhere provided for in the Code, must be commenced within four years after the cause of action accrued (that is to say, after the discovery of the facts constituting the legal bar to the adjudication of the right). The plaintiff's predecessor in interest, Gilman, was advised of the judgment of foreclosure on October 1, 1900. This suit was commenced on December 31, 1911, a little more than 11 years after he was advised of that judgment, and 21 years after it was entered. It is not charged in the bill of complaint that Gilman was kept in ignorance of that judgment by any officer of the state, or by any one claiming or holding adversely to his interests; nor is it charged that Gilman was lulled into inaction by the promise, stipulation, or representation of any one, whether claiming or holding adversely or not. With respect to the delay in bringing the present suit, the excuse is that Gilman was pursuing other and fruitless remedies; but this excuse is not sufficient to constitute diligence in seeking re-

lief in a court of equity, assuming that the present suit is such a proceeding. What is required is diligence commensurate with the situation; and, while a court of equity is not bound by the statute of limitations in determining whether laches are chargeable to a plaintiff in a suit of this character, nevertheless it furnishes a reasonable standard for measuring conduct, where that question alone is involved; and, under the circumstances of this case, we must hold that neither the plaintiff nor his predecessors in interest have shown such reasonable diligence in protecting their rights as entitle the plaintiff at this late date to invoke the power of a court of equity. This view of plaintiff's conduct, and that of his predecessors in interest, is supported by an overwhelming weight of authorities.

The case of Burgess v. Hillman, 200 Fed. 929, 119 C. C. A. 225, was a suit in equity brought to avoid the forfeiture of certain lands by the state of Kansas and to have the defendants declared to hold the land in trust for the plaintiff. The facts of that case are very similar to those in the present case, except that the statutes of Kansas do not provide for a judicial foreclosure, as in California. The Kansas statutes authorize certain officers, upon the default of a purchaser of its lands, to publish certain notices and make certain entries in the public records, whereupon a forfeiture takes place, so that, instead of the court there having under consideration the question of the effect of a judgment of a court of the state, the forfeiture was one that had arisen under a statute without judicial action. The court, commenting upon the facts in that case, said:

"The case of Burgess v. Hixon, 75 Kan. 201, 88 Pac. 1076, was a case wherein this same appellant was seeking to eject Hixon from certain school lands which had been purchased from the state by one Walton in the same manner as the lands in controversy herein had been purchased by Adair. Burgess was the assignee of Walton. The language of the court in the case cited is very appropriate as characterizing the position of Burgess in the present case, and we repeat it here, as follows: 'Of course Walton knew from the instant of his first default that his rights were subject to forfeiture. He knew that, upon his failure to pay, it was the imperative duty of the county clerk to put into operation, and of the sheriff to carry out, forfeiture proceedings. He was bound to anticipate and to expect that the law would be followed, and the record which was in fact made was ample to give him information that the state had undertaken to terminate his rights, and that the officials, having authority in the matter, construed what was done to amount to a restoration of the land to the public domain.' It sufficiently appears from the record that the lands in question were of a speculative value, and appellant does not seem to have had sufficient interest in the same for three years to pay any of the installments of interest, or to ascertain, from the many sources of information open to him, the condition of the title. After having had actual notice of the forfeiture, he delayed more than a year before commencing his action in the state court, and then, after that action had been pending for two years, he dismissed it and commenced the present action. In the meantime appellees had gone into possession of the land and made lasting and valuable improvements. It is true appellant in his bill offers to allow appellees to receive credit by deducting the value of the improvements from the rents and profits claimed by appellant, but we do not think appellees in equity owe appellant any rents and profits."

The decree of the lower court, dismissing the bill on demurrer for want of equity, was accordingly affirmed by the appellate court.

The facts alleged by the bill of complaint in the present case, invoking the equitable powers of the court, are not nearly so strong as they were in the case cited. We conclude that in no aspect does the complaint state a case for the interposition of a court of equity.

The decree of the court below is affirmed.